**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Faith Stekly,<br><br>          Plaintiff,<br><br>v.<br><br>I.Q. Data International, Inc., and<br><br>Liberty Mutual Insurance Company,<br><br>          Defendants. | Case No.: 0:25-cv-216-ECT-DLM<br><br><br>**MEMORANDUM** |

## I.      INTRODUCTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Plaintiff Faith Stekly moves for partial judgment on the pleadings under Rule 12(c) as to Defendant I.Q. Data International, Inc.'s liability under the Fair Debt Collection Practices Act (FDCPA), reserving all remaining issues—including damages, attorney's fees, and costs—for later proceedings.

To prevail on a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., a plaintiff must establish: (1) the plaintiff is a consumer, (2) the obligation at issue is a consumer debt, (3) the defendant is a debt collector, (4) the defendant engaged in conduct that violated the FDCPA, and (5) the plaintiff suffered damages. See *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1000 (8th Cir. 2011).

Here, all necessary elements for an FDCPA claim are satisfied, and Defendant I.Q. Data International, Inc. ("IQ Data") has admitted key facts that establish liability. Plaintiff

-1-

is a consumer. The obligation at issue is a consumer debt arising from a residential lease. IQ Data is a licensed debt collector that collects debts owed to others. IQ Data further admits that it received Plaintiff's written dispute and cease request on March 11, 2024, yet continued collection efforts by sending a written demand for payment on March 18, 2024. These admissions make clear that IQ Data violated 15 U.S.C. § 1692c(c), which prohibits further collection activity after a consumer disputes a debt in writing and requests that all collection efforts cease. It is also clear from the undisputed evidence in this case, and the four corners of the relevant documents incorporated by reference into the First Amended Complaint, that Defendant IQ Data attempted to collect interest on this debt to which it was not entitled to under Minnesota law and in violation of 1692f and 1692f(1).

Because there are no material factual disputes on these points, this matter is ripe for determination under Federal Rule of Civil Procedure 12(c), and judgment on the pleadings as to IQ Data's liability under 15 U.S.C. § 1692c(c), 1692f and 1692f(1) is warranted.

## II.     LEGAL STANDARD

### A. Fed.R.Civ.P. 12(c) Standard.

A motion for judgment on the pleadings under Rule 12(c) is appropriate when the material facts are not in dispute and judgment may be rendered as a matter of law. The Court must accept all factual allegations in the pleadings as true and draw all reasonable inferences in favor of the non-moving party. If the admitted allegations establish liability without the need for further factual development, judgment on the pleadings is warranted. This Court recently articulated the Fed.R.Civ.P. 12(c) standard:

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018) (quotation omitted). A motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under that standard, a court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the non-moving party's favor. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citations omitted). Although the factual allegations need not be detailed, they must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A pleading's allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam) (quoting *Magee v. Trs. of the Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014)). Courts construe pro se complaints liberally, but pro se litigants "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases). Pro se plaintiffs "are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion—and, by extension, a Rule 12(c) motion—into one for summary judgment, but not when the documents are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted); *see* Fed. R. Civ. P. 12(d). Where no party refutes their authenticity or completeness, *see Scott v. Harris*, 550 U.S. 372, 378 (2007); *Abdullah v. Lepinski*, No. 23-cv-121 (ECT/DTS), 2023 WL 5515895, at *1 (D. Minn. Aug. 25, 2023),[3] police body-worn videos "of an incident are necessarily embraced by the pleadings" and may be considered in adjudicating a motion for judgment on the pleadings, *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023). A complaint's allegations should not be accepted "if they are blatantly contradicted by video evidence." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019) (cleaned up).

*Marrieo Cartez Williams, Plaintiff, v. City of Minneapolis Police Department; Officer Mohamud Jama, in his individual, & official capacities; Officer Andrew Schroeder, in his individual, & official capacities; Officer Jeremiah Smersruh, in his individual, & official*

*capacities, & John Doe 1-5, Defendants.,* No. 23-CV-3459 (ECT/ECW), 2025 WL 835825, at *2–3 (D. Minn. Mar. 14, 2025).

### B.  FDCPA Liability Standard Generally.

To prevail on an FDCPA claim, a plaintiff must establish:

1.  The plaintiff is a consumer.

2.  The obligation at issue is a consumer debt.

3.  The defendant is a debt collector.

4.  The defendant engaged in conduct that violated the FDCPA.

5.  The plaintiff suffered damages.

See *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1000 (8th Cir. 2011). Moreover, the court views the collection conduct of the debt collector through the lens of the "unsophisticated consumer" standard:

> As a general matter, we have applied the unsophisticated consumer standard to FDCPA claims. *See Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004). It "is 'designed to protect consumers of below average sophistication or intelligence without having the standard tied to "the very last rung of the sophistication ladder." ' " *Id.* (quoting *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000) ). "This standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id.* at 317-18.

*Scheffler v. Gurstel Chargo, P.A.,* 902 F.3d 757, 761–62 (8th Cir. 2018)

### C.  FDCPA Liability Under 15 U.S.C. § 1692c(c).

The FDCPA states in pertinent part:

> **(c) Ceasing communication**
> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further

communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
**(1)** to advise the consumer that the debt collector's further efforts are being terminated;
**(2)** to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
**(3)** where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c). Furthermore, the Eight Circuit has held:

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt ....

The FDCPA expressly exempts certain communications, including those made "to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor." *Id.* at § 1692c(c)(2).

*Scheffler*, 902 F.3d at 760.

### D.  FDCPA Liability Under 15 U.S.C. § 1692f and 1692f(1).

Under the Fair Debt Collection Practices Act (FDCPA), specifically 15 U.S.C. § 1692f(1), debt collectors are prohibited from collecting any amount, including interest, fees, or charges, unless such amounts are expressly authorized by the agreement creating the debt or permitted by law. The FDCPA states in pertinent part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C.A. § 1692f.

Misrepresentations regarding the amount or legal status of a debt, including unauthorized interest or fees, violate the FDCPA. In *Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000), the Eighth Circuit held that even a slight overstatement of interest in collection letters constituted an attempt to collect an amount not permitted by law, violating § 1692f(1). Therefore, in the Eighth Circuit, a violation of 15 U.S.C. § 1692f(1) occurs when a debt collector attempts to collect amounts not authorized by the original agreement or permitted by applicable state law. Courts will assess whether the charges, including interest, are justified under the governing contract and state statutes to determine compliance with the FDCPA.

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS.

The following relevant facts are drawn from the First Amended Complaint (ECF #9) and the Answer (ECF #13), and show that there is no material dispute of fact and that the Plaintiff is entitled to judgment as a matter of law as to liability under Fed.R.Civ.P. 12(c).

| First Amended Complaint by Plaintiff at ECF #9 | Answer to First Amended Complaint by Defendant I.Q. Data International, Inc. at ECF #13 |
| --- | --- |
| 12. Plaintiff Faith Stekly (hereinafter "Plaintiff") is a natural person who resides in the County of Anoka, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or | 12. Paragraph 12 of the Complaint contains legal conclusions that do not require a specific factual admission or denial. To the extent a response is deemed necessary, Defendant lacks knowledge or |

| | |
|---|---|
| a person affected by a violation of that law. | information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the FAC, and on that basis denies the same. |
| 14. Defendant I.Q. Data International, Inc. (hereinafter "Defendant IQDI") is a collection agency operating from a principal office address of 21222 30th Drive SE, Suite 120, Bothell, WA 98021, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). | 14. Defendant admits that IQ Data's previous principal place of business was located at 21222 30th Drive SE, Suite 120, Bothell, Washington 98021. Answering further, Defendant admits that IQ Data sometimes provides debt collection services. IQ Data denies the remaining allegations in Paragraph 14 of the FAC. |
| 25. Plaintiff allegedly incurred a personal debt from Lexi Apartments, Roers Companies, related to apartment rental services ("Debt"). | 25. Defendant admits the allegations in Paragraph 25 of the FAC. |
| 27. On or about February 13, 2024, Defendant IQDI began attempting to collect the Debt from Plaintiff. | 27. Defendant admits the allegations in Paragraph 27 of the FAC. |
| 39. Later, Plaintiff again disputed this debt and instructed Defendant IQDI to cease and assist any further contact with her regarding it by sending it a certified letter on her around March 2, 2024, which stated:<br><br>March 2, 2024<br><br>Via Certified Mail<br>IQ Data International<br>P.O. Box 340, Bothell, WA 98041-0340<br>Phone: 888-248-2509 ext. 1358<br><br>RE: Faith Stekly<br><br>Dear IQ Data International, | 39. Defendant lacks knowledge regarding when Plaintiff sent IQ Data the dispute letter. Answering further, Defendant admits that it received the dispute letter that was dated March 2, 2024, from Plaintiff and states that the letter speaks for itself. |

| | |
|---|---|
| I, Faith Stekly vehemently dispute the balance and existence of this debt amount in its entirety.<br><br>The collection of $1,100 as stated by your company is related to a charge from Lexi Apartments where there is no basis in fact or law for the charge or collection of such an amount.<br><br>Neither your company, or the original creditor, is entitled to payment of the amount claimed. If the landlord had taken legal action on these claims, which the landlord has not, I would have presented a strong and defensible legal position against this claim.<br><br>Please cease all collection activities immediately.<br><br>You may send any further correspondence to me over email at **XXXXXXXXXX@icloud.com.**<br><br>Sincerely,<br>[*Ink Signature*]<br>Faith E. Stekly | |
| 40. Thereafter, after receiving this Certified Letter on March 11, 2024, rather [than] ceasing its debt collection activities as required under the FDCPA, Defendant IQDI continued to try to collect this Debt and sent Plaintiff a written demand for the payment of it on or around March 18, 2024, violating 15 U.S.C. § 1692c(c) by attempting further collection despite a clear written request to cease communication and a written dispute of the debt. | 40. Defendant admits only that it mailed a letter to Plaintiff dated March 18, 2024. Answering further, Defendant denies the remaining allegations in Paragraph 40 of the FAC and states that the letter speaks for itself. |

## IV.   Legal Argument

### A. Defendant's Continued Collection Efforts After Plaintiff's Written Dispute and Cease Communication Demand Violated 15 U.S.C. § 1692c(c).

Defendant IQ Data's admissions in its answer to the First Amended Complaint, ECF #13, establish liability against it.

**First**, Plaintiff is indisputably a "natural person" alleged to owe a consumer debt. (FAC ¶ 12). 15 U.S.C. § 1692a(3).

**Second**, the obligation at issue is a consumer debt arising from Plaintiff's residential apartment lease (FAC ¶ 25) and Declaration of Faith Stekly, Exhibit 3. 15 U.S.C. § 1692a(5).

**Third**, Defendant IQ Data is a licensed debt collector that collects debts owed to others (FAC ¶ 14). This fact is not reasonably in dispute and has been admitted by Defendant IQ Data. 15 U.S.C. § 1692a(6).

**Fourth**, Defendant IQ Data violated the FDCPA. The FDCPA prohibits further collection activity once a consumer disputes a debt in writing and demands that all collection efforts cease. 15 U.S.C. § 1692c(c). Defendant IQ Data admits that Plaintiff sent a written dispute and cease request dated March 2, 2024 (FAC ¶ 39). Defendant IQ Data admits that it received this written dispute on March 11, 2024 (FAC ¶ 39). Finally, Defendant IQ Data admits that it continued collection efforts by sending a written demand for payment on March 18, 2024 (FAC ¶ 40) and Stekly Decl. Exhibit 2, which states in

pertinent part: "Please remit the balance in full of $1061.38 or contact our office to discuss this debt."

These admissions indisputably establish that Defendant IQ Data violated 15 U.S.C. § 1692c(c) by continuing to attempt to collect the disputed debt after receiving Plaintiff's written dispute and written request to cease communications. The FDCPA mandates that upon receipt of such a request, the debt collector must cease all further collection activities (except for limited exceptions not applicable here). Defendant IQ Data did not cease and for that it bears liability to this Plaintiff under the FDCPA, leaving the issue of damages for a jury.

In an analogous circumstance to the instant case--where letters were sent to the consumer after they disputed the debt and told the collector to stop communicating with them--Hon. Sr. Judge David Doty interpreted this cease-and-desist provision of the FDCPA, thusly:

> Congress enacted the FDCPA to protect consumers "in response to abusive, deceptive, and unfair debt collection practices." *Schmitt v. FMA Alliance, Ltd.,* 398 F.3d 995, 997 (8th Cir.2005). **"If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c).**
>
> Hagen argues that the letters sent to her after July 11, 2013, were prohibited under § 1692c(c). M & K responds that the letters complied with Hagen's conditional request to stop further "non-litigation contact." Specifically, M & K argues that Hagen's request was ambiguous and that its letters constituted non-litigation contacts because they were sent to enforce Capital One's rights as a judgment creditor. The court disagrees.

Although the scope of what Hagen intended to prohibit is unclear, the court finds that **no reasonable interpretation of her letter would allow M & K to continue sending her general debt collection letters.** *See Barnes v. Seterus, Inc.,* No. 13–81021–CV, 2013 WL 6834720, at *2 (S.D.Fla. Dec. 26, 2013) (rejecting argument that consumer's request to "stop ASAP with harassing phone calls daily and on the weekends" allowed debt collector to continue making general contacts regarding her debt). Moreover, M & K's letters were not litigation-related simply because Capital One secured a judgment against Hagen. M & K notes that judgment creditors may pursue discovery and seek remedies following entry of judgment. *See, e.g.,* Minn. Stat. §§ 550.01, 571.71; Minn. R. Civ. P. 69. **The letters sent to Hagen, however, did not express an intent to pursue formal procedures or remedies. Rather, their purpose was to seek repayment without resorting to litigation.**

M & K next argues that Hagen's letter was invalid because it was sent by an attorney rather than a consumer. "Consumer" is defined for purposes of § 1692c to include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). M & K argues that the omission of a consumer's attorney from this list indicates that only a consumer may make a valid cease request. The court disagrees. **The court is not aware of any authority invalidating a written request under § 1692c(c) because it was sent by an attorney. Without express language indicating otherwise, the court will not infer that § 1692c(c) prohibits Hagen from obtaining counsel to protect her rights under the FDCPA. As a result, no reasonable juror could conclude that the letters sent by M & K after July 11, 2013, were permissible under the FDCPA, and summary judgment is warranted in favor of Hagen.**

*Hagen v. Messerli & Kramer, P.A.,* 85 F. Supp. 3d 1028, 1030–31 (D. Minn. 2015) (bold emphasis added, footnotes omitted).

Just as in *Hagen*, the facts here present no ambiguity. Plaintiff Stekly notified Defendant IQ Data in writing that she refused to pay the alleged debt and expressly demanded that it cease all further communication with her. Despite this clear and unequivocal cease-and-desist notice, Defendant IQ Data sent an additional debt collection letter to her in direct violation of 15 U.S.C. § 1692c(c). As Judge Doty recognized in Hagen, no reasonable interpretation of a consumer's written refusal to pay and demand for

no further contact permits a debt collector to continue sending general collection communications. Defendant's conduct here mirrors the unlawful behavior rejected in *Hagen* and likewise violates the FDCPA as a matter of law.

### B. IQ Data's Attempt to Collect Unlawful Interest Is Not in Dispute and Violates 15 U.S.C. § 1692f(1) as a Matter of Law.

Plaintiff is entitled to judgment on the pleadings on her claim that Defendant IQ Data International, Inc. violated the Fair Debt Collection Practices Act by attempting to collect interest charges not authorized by any agreement or permitted by law. The lease agreement between Plaintiff and her former landlord does not contain any provision permitting the assessment of interest on unpaid charges after the termination of the tenancy. See Decl. Stekly, ¶5. The lease does not reference any post-move-out interest accrual and does not contain any language authorizing interest on disputed balances. Absent an express agreement to interest in the underlying lease, Defendant had no contractual basis to impose or attempt to collect any interest on the alleged debt.

Under Minnesota law, creditors may not unilaterally impose interest charges unless a written agreement expressly authorizes them. Minnesota Statutes § 334.01, subdivision 1, provides that the legal interest rate on any indebtedness is six percent per annum unless a different rate is agreed to in writing. Where, as here, the agreement is silent as to interest, and the alleged debt has not been adjudicated by any court, the creditor has no lawful basis to demand or add interest to the amount claimed. Minnesota law does not authorize creditors or debt collectors to independently impose pre-judgment interest without a judgment or contractual authority. See Minn. Stat. § 549.09. The statute authorizes interest

only where there is an award of pecuniary damages through a judgment or arbitration, which is not the case here. This statute sets a default rule: no interest can be charged unless it is either (1) agreed to in writing, or (2) awarded by a court following a judgment. If no such agreement exists, the maximum lawful interest rate is zero unless and until a judgment is entered.

Turning to the Plaintiff's lease agreement: there is no provision in the lease that authorizes the landlord to impose interest on unpaid balances either during or after the lease term. Decl. Stekly, ¶5 Ex. 3.While the lease contains provisions about late fees and specific charges in the event of nonpayment, nowhere does it authorize the imposition of interest on unpaid rent, fees, or damages. Moreover, nothing in the lease incorporates an interest rate or refers to Minn. Stat. § 334.01 or § 549.09. The lease does not delegate to the landlord, or its debt collector, the right to determine a rate unilaterally. Nor does it allow for post-tenancy interest accrual while the account remains disputed and unadjudicated.

Under long-settled Minnesota law, contracts are construed against the drafter, particularly when they unambiguously omit material terms.

> The determination of whether a contract is ambiguous is a question of law. *Lamb Plumbing & Heating Co. v. Kraus–Anderson,* 296 N.W.2d 859, 862 (Minn.1980). In making that determination, a court must give the contract language its plain and ordinary meaning. *Employers Mut. Liab. Ins. Co. v. Eagles Lodge,* 282 Minn. 477, 479, 165 N.W.2d 554, 556 (1969). A contract must be interpreted in a way that gives all of its provisions meaning. *Independent Sch. Dist. No. 877 v. Loberg Plumbing & Heating Co.,* 266 Minn. 426, 436, 123 N.W.2d 793, 799–800 (1963). A contract is ambiguous if its language is reasonably susceptible of more than one interpretation. *Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973); *Lamb,* 296 N.W.2d at 862. If a contract is ambiguous, it must be construed against its drafter. *Lowry v. Kneeland,* 263 Minn. 537, 541, 117 N.W.2d 207, 210 (1962).

*Current Tech. Concepts, Inc. v. Irie Enterprises, Inc.,* 530 N.W.2d 539, 542 (Minn. 1995)

If the landlord intended to charge interest on post-tenancy debts, it certainly could have said so in writing somewhere in the 55-page, small print, legal-sized apartment lease contract that it drafted for the Plaintiff to sign. It did not. The silence of the lease on this point operates as a waiver of the right to impose interest, and any attempt by Defendant to later impose such charges is unauthorized and unlawful. Under Minnesota law, where no agreement to interest exists, none may be imposed. The absence of any term authorizing interest reflects the parties' agreement that no interest would accrue—effectively setting the applicable rate at zero percent.

In the instant case, the statute of frauds clearly applies to Plaintiff's apartment rental contract because it was 15.5 months in duration. Decl. Stekly, ¶5 Ex. 3.

> Under the statute of frauds, an agreement must be "in writing, and subscribed by the party charged therewith." Minn. Stat. § 513.01. The required writing must "state the consideration" and **"state expressly or by necessary implication the parties to the contract,"** the subject matter of the agreement, and "the general terms and conditions of" the agreement. *Malevich v. Hakola*, 278 N.W.2d 541, 544 (Minn. 1979). "Where a contract within the statute of frauds is made out by correspondence, the correspondence taken together must establish the contract in all its terms," without any "aid from parol evidence." *Lewis v. Johnson*, 143 N.W. 1127, 1128 (Minn. 1913). "Evidence of extrinsic facts and circumstances" may not "supplement a manifestly incomplete [writing] by proving the description by parol." *Taylor v. Allen*, 42 N.W. 292, 292 (Minn. 1889).

*S. M. Hentges & Sons, Inc. v. Mark Elliot Homes, LLC*, No. A22-0736, 2023 WL 125847, at *9 (Minn. Ct. App. Jan. 9, 2023)(unpublished, emphasis in original).

Accordingly, because there is no agreement authorizing prejudgment interest and no judgment awarding it, the landlord (and by extension Defendant IQ Data acting as its

debt collection agent) has no legal basis to charge any amount of interest on the alleged debt. Attempting to do so violates both Minn. Stat. § 334.01 and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1), which prohibits the collection of any amount not expressly authorized by agreement or permitted by law.  Even so, in its March 18, 2024, collection letter Defendant IQ Data unmistakably threatens that it will continue to add pre-judgment interest on Plaintiff's disputed and illiquid debt in violation of Minn. Stat. § 549.09 and §334.01. Decl. Stekly, ¶5, Ex. 3.

Despite this clear legal framework, Defendant IQ Data attempted to collect interest from Plaintiff by increasing the balance of the disputed debt, as reflected in its credit reporting and communications. These unlawful interest charges were not based on any agreement with Plaintiff and were not awarded by any court. Defendant's demand for amounts not expressly authorized by the agreement or permitted by law violates the FDCPA, specifically 15 U.S.C. § 1692f(1), which prohibits the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law. In applying this provision, the Eight Circuit Court of Appeals held that the unauthorized imposition of interest in contravention to the terms of an underlying contract constitutes a per se violation of the statute:

> Kojetin brought this action against CUR because its validation notice misrepresented the amount of the debt after CUR added fifteen percent of the principal balance to Kojetin's obligation. The district court concluded that CUR's notice violated the Act by adding the collection fee based on a percentage rather than on actual costs when Kojetin's agreement with the credit union provided she was liable only for actual costs. Having considered the record, the parties' submissions, and the relevant Minnesota law, *see Campbell v. Worman,* 58 Minn. 561, 60 N.W. 668 (1894), we are satisfied the district court committed no error of

law and judgment was correctly granted for the reasons stated in the district court's order adopting the magistrate judge's report and recommendation.

Contrary to CUR's view, we agree with the district court's conclusion that CUR violated the FDCPA when it charged Kojetin a collection fee based on a percentage of the principal balance that remained due rather than the actual cost of the collection.

*Kojetin v. C U Recovery, Inc.,* 212 F.3d 1318 (8th Cir. 2000).

Because the material facts regarding the lack of contractual authority and the absence of any court judgment are undisputed, and because Defendant has nonetheless attempted to collect these unlawful interest amounts from Plaintiff, Plaintiff is entitled to judgment as a matter of law on this portion of her FDCPA claim under 15 U.S.C. § 1692f and 1692f(1).

### C. Plaintiff Has Article III Standing.

Plaintiff has Article III standing to bring this action because she has alleged that Defendant debt collector's conduct caused her to suffer concrete harm, as required under *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). The following paragraphs from the First Amended Complaint at ECF #9 ("FAC") identify specific, actual injuries that Plaintiff alleges she suffered as a direct result of Defendant's violations of the Fair Debt Collection Practices Act:

- Plaintiff has alleged that Defendant's call to her workplace directly resulted in reputational harm and workplace embarrassment. FAC ¶35.

- Plaintiff has alleged that she was forced to address the debt collection call with her supervisor, causing distress and professional discomfort. FAC ¶36.

- Plaintiff has alleged that she suffered actual damages, including but not limited to emotional distress, frustration, and harm to her creditworthiness. FAC ¶71.

- Plaintiff has alleged that she suffered concrete and particularized harm because the FDCPA provides her with the legally protected right to be treated fairly and truthfully with respect to debt collection. FAC ¶87.

- Plaintiff has alleged that she suffered actual and concrete harm, including stress, anxiety, reputational damage due to false credit reporting, loss of time addressing Defendant's illegal communications, and the frustration of her legally protected rights. FAC ¶88.

- Plaintiff has alleged that Defendant's misrepresentations materially affected and frustrated her ability to intelligently respond to the collection efforts. FAC ¶89.

- Plaintiff has alleged that she suffered pecuniary damage as a result of relying on Defendant's fraudulent misrepresentations. FAC ¶115.

- Plaintiff has alleged that she reasonably relied on Defendant's misrepresentations and suffered damages in wasted time seeking legal advice, the costs of litigation, lost work time, upset, frustration, embarrassment, and stress. FAC ¶119.

In February 2025, the Ninth Circuit Court of Appeals held, in a case against this very Defendant I.Q. Data International, Inc., for almost identical conduct, that sending verification information and a demand for payment to a consumer, *after that consumer had*

*sent a cease-and-desist letter to IQ Data*, was a concrete injury giving that plaintiff Article III standing to sue under the FDCPA.

> **Six claims that he has standing because he received an unwanted letter from IQ after notifying IQ that all correspondence should be sent to his attorney, resulting in an invasion of his privacy interests. IQ claims that Six's alleged harm is insufficient to establish standing because it is not analogous to the types of harm traditionally recognized by American courts.** To determine whether Six had standing to bring his claim, we consider whether he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016)).
> …
>
> When Congress enacted the FDCPA, it recognized that "[a]busive debt collection practices contribute to ... invasions of individual privacy." 15 U.S.C. § 1692(a). And with that knowledge, Congress expressly prohibited debt collectors from communicating directly with consumers who the collectors know are represented by counsel. *Id.* § 1692c(a)(2); *see Ward v. NPAS, Inc.*, 63 F.4th 576, 581 (6th Cir. 2023) (finding that § 1692c(c) protects consumer privacy). **It follows, therefore, that receipt of a letter from a debt collection agency is the type of infringement on privacy interests that Congress contemplated when it enacted the FDCPA. Congress's judgment thus supports Six's claim that he suffered a concrete injury in the context of the statute and has standing to sue.**
> …
>
> **When Six notified IQ that it should communicate only with his counsel, he clearly expressed a desire to be undisturbed by IQ's communications. And by sending a letter after receiving Six's notification, IQ created the kind of "irritating intrusion[ ]" addressed by intrusion upon seclusion.** *Gadelhak*, **950 F.3d at 462. As other courts have held, the fact that IQ sent only one letter does not change the *kind* of harm caused.** *See Lupia*, 8 F.4th at 1192 (holding that a single phone call poses the same kind of harm as intrusion upon seclusion, although it may not be sufficient to establish liability). Accordingly, the harm alleged by Six poses "the same *kind* of harm recognized at common law—an unwanted intrusion into ... plaintiff's peace and quiet," *id.*, and **the harm caused by an unwanted letter, in violation of § 1692c(a)(2), is analogous to the harm caused by intrusion upon seclusion.**

*Six v. IQ Data Int'l, Inc.,* 129 F.4th 630, 633–34 (9th Cir. 2025)(emphasis added).

The Ninth Circuit's recent decision in *Six v. IQ Data Int'l, Inc.* is directly relevant to the Article III standing issue presented here. In *Six*, the court held that when IQ Data sent a debt collection letter to a consumer after that consumer had expressly instructed IQ Data to cease all further communication, the resulting unwanted letter constituted a concrete injury sufficient to confer standing under *Spokeo*. The court emphasized that such conduct intrudes on a consumer's privacy in exactly the way Congress intended to prohibit when it enacted the FDCPA, and it is analogous to the common-law tort of intrusion upon seclusion.

Here, Plaintiff personally instructed Defendant IQ Data to cease all further communication with her. Despite this clear and unequivocal request, Defendant IQ Data sent her additional debt collection communications. That conduct mirrors the conduct in *Six*—indeed, it involves the same Defendant engaging in nearly identical behavior. As the Ninth Circuit recognized, receiving an unwanted communication after affirmatively revoking consent is a concrete, particularized harm that satisfies Article III's injury-in-fact requirement. This Court should adopt the reasoning in *Six* and find that Plaintiff has standing to pursue her claims under the FDCPA based on this unlawful and intrusive communication.

One district court in this Circuit analyzed the standing issue under the FDCPA for the receipt of an unwanted collection letter, thusly:

> In short, where, as here, Congress has put in place substantive protections in furtherance of the legislative goal and a plaintiff suffers harm in the manner that

such substantive protections were intended to prevent, the court does not view a plaintiff as needing to "allege any additional harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis omitted).

This conclusion is bolstered by the Eighth Circuit Court of Appeals's interpretation of *Spokeo* as applied to the FDCPA. In *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017). In *Demarais*, the Eighth Circuit considered a factual situation similar to the one currently before the court. The plaintiff in *Demarais*, among other things, received a letter from a debt collector "attempt[ing] to collect a debt not owed in violation of [15 U.S.C.] § 1692f(1)." *Id.* at 691. Like here, the Eighth Circuit recognized that there were no tangible harms stemming from the letter. *Id.* The Eighth Circuit reasoned that "Congress recognized that abusive debt collection practices contribute to harms that can flow from mental distress" and, therefore, "created a statutory right" to be free from such practices. *Id.* at 692. The violations of the FDCPA, "directed at [the plaintiff] and tending to cause reasonable people mental distress, create the risk of real, concrete harms" sufficient to establish an injury in fact. *Id.* Such reasoning is persuasive here as well. **Congress created a statutory right to be free from abusive attempts to collect on debt and provided consumers the right of repose from such communications by invoking a cease-communications directive.** *See* **15 U.S.C. § 1692c(c). A violation of such right creates the risk of real, concrete harms.** Accordingly, the court shall deny the SWC Motion with respect to standing.

*Schultz v. Sw. Credit Sys., LP,* No. 16-CV-2033-LRR, 2017 WL 11457912, at *6 (N.D. Iowa Oct. 13, 2017)(emphasis added). As the Eighth Circuit explained in *Demarais*, FDCPA violations that create privacy invasions or emotional distress—like those alleged here—are precisely the type of intangible harms that satisfy Article III's injury-in-fact requirement.

Congress recognized that abusive debt collection practices contribute to harms that can flow from mental distress, like "marital instability" and "the loss of jobs." **§ 1692(a)**. "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is ... instructive and important." *Spokeo*, 136 S.Ct. at 1549.

*Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 692 (8th Cir. 2017).

-20-

### D. The Court May Consider Undisputed Documents Embraced by the Pleadings.

When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed.R.Civ.P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," *Missouri ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir.), *cert. denied,* 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999), as well as materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos. v. National Union Fire Ins. Co.,* 967 F.Supp. 1148, 1152 (D.Minn.1997). *See also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1357, at 299 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

*Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999). A document is embraced by the pleadings if it is necessarily embraced by the complaint, referenced therein, and its authenticity is not in dispute:

However, in considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint. *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.1999). The two writings which Stoppelmoor offered at and after the hearing may be viewed as attachments to his complaint, and as the contracts upon which his claim rests, they are evidently embraced by the pleadings. *See Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 831 (8th Cir.2003) ( "When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." (quotation marks omitted)). We therefore determine that notwithstanding the introduction of these two exhibits into the record, the SBA's motion may still be considered as a motion to dismiss.

*Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 698 n.4 (8th Cir. 2003).

The Plaintiff's cease and desist letter meets this standard. Decl. Stekly ¶3, Ex. 1. It is referenced repeatedly in the First Amended Complaint and is central to Plaintiff's claims.

In response, Defendant does not deny the letter's existence or authenticity, stating "Defendant lacks knowledge regarding when Plaintiff sent IQ Data the dispute letter. Answering further, Defendant admits that it received the dispute letter that was dated March 2, 2024, from Plaintiff and states that **the letter speaks for itself**." ECF #13, ¶39 (bold underline added).

Likewise, Defendant's collection letter date March 18, 2024, is also referenced in the First Amended Complaint and the Answer, and is not subject to any challenge regarding its authenticity. Decl. Stekly ¶4, Ex. 2. "Defendant admits only that it mailed a letter to Plaintiff dated March 18, 2024. Answering further, Defendant denies the remaining allegations in Paragraph 40 of the FAC and states that **the letter speaks for itself**." ECF #13, ¶40. (bold underline added).

In short, both letters are embraced by the pleadings, they are not in dispute, and--most importantly--they speak for themselves. The Court may and should consider them in resolving this motion.

Furthermore, the apartment lease agreement attached as Exhibit 3 to the Declaration of Stekly is also incorporated by reference into the pleadings and is embraced by the Complaint. Decl. Stekly ¶5, Ex. 3. Plaintiff's claims arise directly from the lease and the obligations and alleged charges flowing from it, and Defendant has not disputed the authenticity or applicability of the lease. In addition, Defendant attached several pages of this same lease agreement to its March 18, 2024, collection letter, which is attached to the Stekly Declaration as Exhibit 2. Accordingly, the Court may properly consider the lease

agreement at the Rule 12(c) stage without converting the motion into one for summary judgment.

## V.   MEET AND CONFER EFFORTS UNDER LOCAL RULE 7.1

On March 28, 2025, at 1:00 p.m. CT, the undersigned and co-counsel Samuel Savage, Esq., held a 46-minute scheduled call with Defendant's counsel, Ashley Everett, Esq., in a good faith effort to comply with Local Rule 7.1. During this fulsome discussion, counsel addressed many of the facts, procedural posture, supporting evidence, as well as other case issues relevant to the motion. Despite sincere efforts to reach agreement on potential stipulations to liability, offers of judgment, or alternative resolutions, the parties were unable to resolve the matter, thereby necessitating the filing of this motion. Defendant IQ Data opposes this motion.

## VI.   CONCLUSION

In sum, when a consumer notifies a debt collector in writing that she disputes the debt, refuses to pay it, and demands that all further collection efforts cease, the FDCPA requires that the collector stop. Defendant failed to do so. That violation alone warrants judgment on the pleadings. In addition, Defendant attempted to collect interest on a contract that does not authorize any such charge. Because the lease agreement is silent as to interest, and no statute or judgment permits it, the imposition of interest is unlawful and independently violates the FDCPA. Judgment on the pleadings is therefore appropriate on that claim as well. Finally, Plaintiff has clearly and competently alleged a concrete injury sufficient to establish Article III standing for each of these violations.

## VII.   REQUEST FOR RELIEF

For the reasons stated above, Defendant IQ Data has admitted facts that establish its liability under the FDCPA as a matter of law. No genuine dispute of material fact remains, and the violations are clear. Granting judgment on the pleadings as to liability will streamline further proceedings and promote judicial efficiency. Plaintiff respectfully requests that the Court enter judgment as to liability under 15 U.S.C. §§ 1692c(c), 1692f, and 1692f(1), reserving the issues of damages, fees, and any additional claims for further proceedings.

Respectfully submitted,

Dated: March 28, 2025

**THE BARRY LAW OFFICE, LTD**

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone:  (612) 379-8800
pbarry@lawpoint.com

**SAVAGE-WESTRICK, PLLP**

Samuel A. Savage, Esq.
Attorney I.D.# 0395638
900 American Blvd. East, Suite. 241
Bloomington, MN 55420
Telephone: (651) 292-9603
Fax: (651) 395-7423
savage@savagewestrick.com

*Attorneys for Plaintiff*

-24-