**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Faith Stekly, | Case No.: 0:25-cv-00216-ECT-DLM |
| Plaintiff, | |
| v. | **IQ DATA INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| IQ Data International, Inc., and Liberty Mutual Insurance Company, | |
| Defendant. | |

Defendant, I.Q. Data International, Inc. ("Defendant" or "IQ Data"), submits this memorandum in opposition to Plaintiff's Motion for Judgment on the Pleadings and states as follows:

## I.    INTRODUCTION

In her Motion for Judgment on the Pleadings, Plaintiff alleges that the undisputed facts prove that IQ Data violated Section 1692c(c) and Section 1692f(1) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA).  First, Plaintiff alleges that IQ Data's March 18, 2025 letter violated Section 1692c(c), even though IQ Data was legally required to send this letter in response to Plaintiff's dispute. Plaintiff's dispute letter also invites IQ Data to respond. Second, Plaintiff alleges a violation of Section 1692f(1) of the FDCPA by stating interest would accrue. IQ Data's statement with respect to interest accruing was legally accurate. Even if it was not, Plaintiff does not allege that she paid any interest or that she relied on this statement to her detriment. For these reasons, Plaintiff's motion for judgment on the pleadings should be denied.

## II.    LEGAL STANDARD

"Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law."). The Court ordinarily does not consider matters outside the pleadings on a motion under Rule 12(c). See Fed. R. Civ. P. 12(d). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Moreover, "because granting a Rule 12(c) motion 'summarily extinguish[es] litigation at the threshold and foreclose[s] the opportunity for discovery and factual presentation,' courts must treat such motions with the 'greatest of care.'" *Acosta v. Reliance Tr. Co.*, No. 17-CV-4540 (SRN/ECW), 2019 WL 3766379, at *7 (D. Minn. Aug. 9, 2019) (quoting *Comcast Cable Commc'ns, LLC v. Hourani,* 190 F. Supp. 3d 29, 32 (D.D.C. 2016)).

## III.    STATEMENT OF MATERIAL FACTS

Plaintiff filed her First Amended Complaint on February 27, 2025. *See* Docket No. 9. On March 13, 2025, IQ Data filed its Answer and Affirmative Defenses to Plaintiff's First Amended Complaint. *See* Docket No. 13. IQ Data denies most allegations in

Plaintiff's First Amended Complaint, including paragraphs: 5, 8, 9-13, 17-24, 26, 28, 30-48, 50-72, 82-99, and 102-103. *See* Docket No. 13. IQ Data admits the following:

- Plaintiff allegedly incurred a personal debt from Lexi Apartments, Roers Companies, related to apartment rental services ("Debt"). *See* Docket No. 13, at ¶ 25.

- On or about February 13, 2024, Defendant IQ Data began attempting to collect the Debt from Plaintiff. *Id.*, at ¶ 27.

- IQ Data was authorized to collect the balance owed to IQ Data's client. *Id.*, at ¶ 29.

- IQ Data placed a call on February 20, 2024. *Id.*, at ¶30.

- It received a disputed letter that was dated March 2, 2024. *Id*, at ¶ 39. IQ Data does not state the date it received Plaintiff's dispute letter. *Id.*

- IQ Data mailed a letter to Plaintiff dated March 18, 2024. *Id.*, at ¶ 40.

- No court had adjudicated this Debt or Defendant IQ Data's right to add pre-judgment but denies that it was not entitled to collect the debt and interest that accrued. *Id.*, at ¶ 42.

In Plaintiff's March 2, 2024 letter, she stated, "I, Faith Stekly vehemently dispute the balance and existence of this debt amount in its entirety." *See* Docket No. 9, ¶ 13. Plaintiff also stated, "Please cease all collection activities immediately. You may send any further correspondence to me over email at XXXXXXXXX@icloud.com." *Id*.

IQ Data's letter dated March 28, 2024 states:

3

```
MARCH 18, 2024

    PRF                                          Account#: ████████
    STEKLY,FAITH

    14154 MEADOWLAWN TRAIL NE
    PRIOR LAKE MN 55372


RE: Original Creditor: LEXI APTS (MN)

        Principal Due:    $1051.18
          Interest Due:     $10.20
             Total Due:    $1061.38

Dear FAITH STEKLY

In reference to your recent request, please find enclosed validation of debt
you requested with LEXI APTS (MN).

Please remit the balance in full of $1061.38 or contact our office to
discuss this debt.

Should you have any further questions, please contact the undersigned below.

Sincerely,


Account Representative
888-248-2509

I.Q. Data International, Inc. is not a debt buyer.  We are a third party
debt collection agency retained by your former property management company to
collect on your outstanding debt.

This communication from a debt collector is an attempt to collect a debt
and any information obtained will be used for that purpose. Your outstanding
principal balance will accrue interest at a rate of 006.00 percent per annum.
```

*See* Docket No. 21, Ex. 2. IQ Data attached Plaintiff's Resident Ledger and the signed

Apartment Lease Contract from Lexi Apartments to the letter to validate the debt. *Id.*

## IV.    ARGUMENT

The allegations and denials in the pleadings do not establish that IQ Data violated

15 U.S.C. § 1692c(c) or 15 U.S.C. § 1692f(1) as a matter of law.

### A.  IQ Data Did Not Violate 15 U.S.C. § 1692c(c).

Section 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing

that the consumer refuses to pay a debt or that the consumer wishes the debt collector to

4

cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." A consumer can waive this protection just as Plaintiff did here. *See Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757, 763 (8th Cir. 2018). If a debtor disputes a debt, the debt collector shall cease efforts to collect that debt until the debt collector obtains verification of the debt or the name and address of the original creditor and mails that information to the debtor. 15 U.S.C. § 1692g(b); *Labore v. J.P. Morgan Chase Bank*, No. A06-1990, 2007 WL 3072065, at *7 (Minn. Ct. App. Oct. 23, 2007). By including language that she disputed the debt in her March 2, 2024 letter, Plaintiff invited IQ Data to confirm the amount owed. *See Bauer v. Midland Credit Mgmt., Inc.*, No. 4:23-CV-00367-DGK, 2024 WL 3512079, at *4 (W.D. Mo. July 23, 2024) (granting debt collector's motion for summary judgment is and denying plaintiff's motion for summary judgment because plaintiff had not pointed to any other evidence indicating that he believed the letter was an attempt to collect a debt). Additionally, section 1692g(a)(4) of the FDCPA <u>requires</u> a debt collector to provide a verification of a debt to a consumer if the consumer disputes the debt in writing within 30 days of receipt of the debt collector's initial notice of the debt, *see*, 15 U.S.C. § 1692g(a)(4).

In this case, Plaintiff claims IQ Data began collecting the debt on February 13, 2024 and she disputed the debt in her March 2, 2024 letter. IQ Data was obligated to provide a verification of the debt which is exactly what it did. Plaintiff also invited IQ Data to confirm the amount owed. *Smitherman v. Midland Credit Mgmt., Inc.*, No. 4:23-CV-00199-DGK, 2024 WL 3015790, at *5 (W.D. Mo. June 14, 2024) (finding that defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied

considering the response letters in tandem with the initial letters, and using common sense, plaintiff waived her § 1692c(c) claim).

Plaintiff also does not allege any facts that indicate she believed the letter was an attempt to collect a debt and why she believed the letter was an attempt to collect a debt. *See Smitherman v. Midland Credit Mgmt., Inc.*, No. 4:23-CV-00199-DGK, 2024 WL 3015790, at *5 (W.D. Mo. June 14, 2024) (finding that aside from a boilerplate disclosure, Plaintiff did not point to any other evidence indicating that she believed the letters were an attempt to collect a debt).

IQ Data's letter was simply sent to validate the disputed debt as is required by the FDCPA. The attachments IQ Data included to the letter support the balance was owed. IQ Data cannot be held liable for providing information that is legally required.

### B.  IQ Data Did Not Violate 15 U.S.C. § 1692f(1).

Plaintiff alleges that IQ Data's letter which states interest would accrue at 6% interest per annum violated Section 1692f(1) because Minnesota law does not authorize debt collectors to independently impose pre-judgment interest without a judgment or contractual authority. *See* Minn. Stat. § 549.09. As an initial matter, the referenced letter does <u>not</u> claim to seek prejudgment interest under Minn. Stat. § 549.09. In fact, there is absolutely no reference to Minn. Stat. § 549.09 or any other particular statute at all.

Section 1692f of the FDCPA provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C.. § 1692f. Section 1692f(1) provides the following is a violation: "(1) The collection of any amount (including any **<u>interest</u>**, fee, charge, or expense incidental to the principal obligation) unless such

amount is expressly authorized by the agreement creating the debt or permitted by law."

*Id*. (emphasis added).

Plaintiff specifically argues that because the lease agreement is silent as to interest, and the alleged debt has not been adjudicated by any court, the creditor has no lawful basis to demand or add interest to the amount claimed. The Eighth Circuit in *Hill v. ARS*, held that merely pursuing state-statutory interest does not violate the FDCPA.

> Hill argues that [the collection agency] violated [§ 1692f and § 1692f(1)] by attempting to collect interest under Minnesota Statutes § 549.09. [The collection agency's] conciliation court complaint, however, sought interest under Minnesota Statutes § 334.01. Whether § 334.01 applies to [the collection agency's] conciliation court claim is a question of Minnesota law that has not been decided by the Minnesota Supreme Court. Furthermore, the text of § 334.01 does not prohibit [the collection agency] from recovering such interest. That [the consumer] may have had a valid legal defense to the application of the statute does not mean that [the collection agency] attempted to collect interest that is not permitted by law.

*Hill v. Accts. Receivable Servs., LLC*, 888 F.3d 343 (8th Cir. 2018). Under *Hill*, even assuming a "technical" violation, merely referencing that such interest may accrue does not amount to a "material" violation. Plaintiff's attempted "improper interest" claim fails under controlling Eighth Circuit precedent.

The FDCPA specifically allows a collector to seek interest on a debt, so long as the interest sought is "expressly authorized by the agreement creating the debt or *permitted by law*." 15 U.S.C. § 1692f(1) (emphasis added). Minnesota law *does* authorize interest "for any legal indebtedness." Minn. Stat. § 334.01, subd. 1 ("The interest for any legal indebtedness shall be at the rate of $ 6 upon $ 100 for a year, unless a different rate is contracted for in writing.").

7

Minnesota courts recognize that a "creditor is entitled to interest where damages are liquidated, or where damages are unliquidated and the amount due is readily ascertainable by computation or by reference to generally recognized objective standards of measurement." *Egge v. Healthspan Servs. Co.*, No. CIV. 00-934 ADM/AJB, 2002 WL 31426190, at *3 (D. Minn. Oct. 28, 2002) (citing *ICC Leasing Corp. v. Midwestern Mach. Corp.*, 257 N.W.2d 551, 556 (Minn. 1977); *L.P. Med. Specialists, Ltd. v. St. Louis County*, 379 N.W.2d 104, 110 (Minn. Ct. App. 1985). The Minnesota Supreme Court refers to the ability to collect such interest on debt as an "entitlement." *Donaldson v. Mankato Policemen's Benefit Ass'n*, 278 N.W.2d 533, 538 (Minn. 1979) ("[Plaintiff] is entitled to simple interest at 6 percent per annum, Minn. Stat. § 334.01, on the payments as they become due.").

The Minnesota Court of Appeals addressed the interplay between § 549.09 and § 334.01 in *Hogenson v. Hogenson*, 852 N.W.2d 266 (Minn. App. 2014). The *Hogenson* Court was asked to consider whether pre-verdict interest on a conversion claim was governed by § 334.01 or § 549.09. *Id.* at 273. The *Hogenson* Court held that application of § 334.01 is not limited to a narrow set of claims. *Id.* Rather, the Court held that: [S]ection 549.09 was meant to supplement, not replace, the existing law on preverdict interest. . . Therefore, we conclude that the phrase "[e]xcept as otherwise . . . allowed by law" requires that preverdict interest be calculated under existing common-law principles whenever possible. . . When damages are not readily ascertainable, or when a claim did not allow for preverdict interest prior to the 1984 amendment, preverdict interest should be calculated exclusively under section 549.09, subd. 1(b)[.]. *Id.* at 273-274. Per *Hogenson*,

where, as here, damages are readily ascertainable or liquidated (*i.e.*, unpaid rent), § 334.01 should be applied. *Id*. at 274.

In addition, Minn. Stat. § 549.09(b) expressly provides that: "Except as otherwise provided by contract *or allowed by law*, preverdict, preaward, or prereport interest on pecuniary damages shall be computed as provided . . ." *Id*. (emphasis added). In construing the phrase "or allowed by law," the Minnesota Court of Appeals concluded that "section 549.09 was meant to supplement, not replace, the existing law[.]" *Hogenson*, 852 N.W.2d at 273-74. The "law" that applies in this case is Minn. Stat. § 334.01, which provides that the "interest for any legal indebtedness shall be at the rate of $ 6 upon $ 100 for a year[.]"

In fact, when confronted with the very interplay of Minn. Stat. § 549.09 and § 334.01 alleged here, the Minnesota Court of Appeals determined that, "[n]othing in the plain language of section 334.01 would lead us to conclude that it applies only to very specific types of claims." *Hogenson*, 852 N.W.2d at 273-74. To the contrary, the phrase in Minn. Stat. § 549.09 "'[e]xcept as otherwise . . . allowed by law' *requires* that preverdict interest be calculated under existing common-law principles [such as Minn. Stat. § 334.01] *whenever possible*." *Id*. (emphasis added).

Thus, "no FDCPA violation can entail from [the collector] having charged interest" to the debt at issue pursuant to § 334.01. *See Egge v. Healthspan Servs. Co.*, No. CIV. 00-934 ADM/AJB, 2002 WL 31426190, at *6 (finding no FDCPA violation where a medical debt was assigned by a healthcare provider to a collection agency and the collection agency thereafter assessed 6% interest to the unpaid balance pursuant to Minn. Stat. § 334.01).

9

Because the text of § 334.01 does not prohibit recovering pre-judgment interest, IQ Data did not engage in unfair practices in violation of the FDCPA by attempting to collect interest. *See Hill v. Accts. Receivable Servs., LLC*, 888 F.3d 343 (8th Cir. 2018) (affirming motion to dismiss the complaint and finding that debt collector did not engage in unfair practices by attempting to collect interest under the Minnesota statute governing rates of interest for legal indebtedness); *Klein v. Credico Inc.*, 922 F.3d 393 (8th Cir. 2019) (holding the district court properly concluded that Minnesota law does not prohibit Credico from seeking pre-judgment interest).

Even if the Court finds interest could not be charged by state law, the FDCPA "'was not meant to convert every violation of a state debt collection law into a federal violation.'" *Klein v. Credico Inc.*, 922 F.3d 393, 397 (8th Cir. 2019) (quoting *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004). This Circuit has dismissed § 1692f(1) claims where the debt collector sought to collect interest whose availability was at the time legally uncertain. *Smith v. Stewart, Zlimen & Jungers, Ltd.*, 990 F.3d 640, 648 (8th Cir. 2021). To the extent the Court finds interest should not have been charged, IQ Data cannot be held liable when this was legally uncertain at the time the letter was sent.

Therefore, Plaintiff's FDCPA violation claims based on the allegation that IQ Data's letter improperly charged interest fails as a matter of law.

**C.    Plaintiff lacks standing to pursue claims based on receipt of IQ Data's letter.**

Plaintiff contends that she suffered an injury in fact when the collectors demanded interest on her debts without a judgment. Plaintiff only received a letter and never paid any

part of the interest or principal. Without suffering a tangible harm, Plaintiff must point to an injury that "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1137–38 (8th Cir. 2023) *citing TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) *quoting* S*pokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." S*pokeo, Inc. v. Robins*, 578 U.S. at 338, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339, 136 S.Ct. 1540, quoting *Lujan*, 504 U.S. at 560 (1992). "No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 141 S. Ct., at 2200, citing *Spokeo*, 578 U.S. at 340-41. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *Id*. at 2203.

Plaintiff received a letter. Without more—without a concrete injury in fact— Plaintiff is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages)." Id. (citation omitted). This conclusion comports with other circuit courts. *See, e.g., Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir.

11

2022) (dismissing for lack of standing a similar FDCPA claim by a plaintiff in receipt of a debt-collection letter because "critically, [plaintiff] didn't make a payment, promise to do so, or other-wise act to her detriment in response to anything in or omitted from the letter"); *Smith v. GC Servs. L.P.*, 986 F.3d 708, 710 (7th Cir. 2021) ("[Plaintiff], who says that she was confused by the letter she received, does not contend that the letter's supposed lack of clarity led her to take any detrimental step, such as paying money she did not owe. She therefore needs some other way to show injury."); *Brunett v. Convergent Outsourcing, Inc*., 982 F.3d 1067, 1069 (7th Cir. 2020) (dismissing FDCPA claims for lack of standing where a plaintiff received a misleading debt-collection letter but did not rely on it to her detriment); *Shields v. Professional Bureau of Collections of Md., Inc*., 55 F.4th 823, 830 (10th Cir. 2022) (dismissing FDCPA claims for lack of standing because plaintiff "never alleged the letters caused her to do anything"); *Trichell v. Midland Credit Mgmt*., 964 F.3d 990, 994 (11th Cir. 2020) (holding that plaintiffs lacked standing to bring FDCPA claims that debt-collection letters were misleading when "neither of [the plaintiffs] claims to have been misled"); *Frank v. Autovest, LLC*, 961 F.3d 1185, 1188 (D.C. Cir. 2020) (holding that plaintiff did not suffer "a concrete personal injury traceable to the false representations" because she "testified unequivocally that she neither took nor failed to take any action because of these statements").

## V.      CONCLUSION

Based on the foregoing, IQ Data respectfully requests that the Court deny Plaintiff's motion for judgment on the pleadings.

GORDON REES SCULLY MANSUKHANI, LLP

Dated:  April 18, 2025          /s/ Suzanne L. Jones
                                Suzanne L. Jones (#389345)
                                Ashley Rae Everett (#0402661)
                                80 South 8th Street, Suite 3850
                                Minneapolis, MN  55402
                                P:  612-382-0625
                                sljones@grsm.com
                                **Counsel for Defendant IQ Data Int'l., Inc.**

13