**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Faith Stekly, <br><br>     Plaintiff, <br><br> v. <br><br> I.Q. Data International, Inc., and <br><br> Liberty Mutual Insurance Company, <br><br>     Defendants. | Case No.: 0:25-cv-216-ECT-DLM <br><br><br> **REPLY MEMORANDUM** |

Plaintiff Faith Stekly respectfully submits this Reply Memorandum in further support of her Motion for Judgment on the Pleadings pursuant to Rule 12(c).

## I. DEFENDANT'S MARCH 18, 2024 LETTER VIOLATED 15 U.S.C. § 1692c(c)

Defendant's opposition concedes that Plaintiff sent a written dispute letter on March 2, 2024 that unequivocally stated (1) that Plaintiff refused to pay the alleged debt, and (2) that Defendant must cease all collection activity. Despite this, Defendant mailed Plaintiff a letter dated March 18, 2024 containing alleged "verification" materials and then demanding payment. That conduct violates § 1692c(c) on its face.

Defendant argues the March 18 letter was a permissible "response" to Plaintiff's dispute, and not a communication in connection with the collection of a debt. That misstates both the facts and the law. First, Plaintiff did not request verification under § 1692g(b); she explicitly instructed Defendant to cease all communications. Second, even if some aspect of the letter could be construed as verification, the letter was plainly a dual-

-1-

purpose communication intended to resume collection efforts. It contained representations about amounts owed, account status, and urged payment. Communications that serve both as verification and collection activity are subject to § 1692c(c). *See Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 227–28 (2d Cir. 2015) (a communication may simultaneously serve to convey required disclosures and be an attempt to collect a debt and induce payment).

The March 18, 2024, letter sent by Defendant to Plaintiff is unmistakably a communication made in connection with the collection of a debt. ECF 21-2. It expressly states, "**This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**" That language alone is dispositive under established FDCPA jurisprudence, as courts consistently hold that the inclusion of this standard debt collection disclaimer confirms the letter's collection purpose. *Hart v. FCI Lender Servs., Inc.,* 797 F.3d 219, 227 (2d Cir. 2015). But the collection intent of the letter goes far beyond this boilerplate language.  The letter also states, "**I.Q. Data International, Inc. Is not a debt buyer. We are a third-party debt collection agency retained by your former property management company to collect on your outstanding debt.**" Id. That language was clearly directed at putting Plaintiff on notice that Defendant was there to collect a debt from her.

The March 18, 2024 collection letter further communicates that "**Your outstanding principal balance will accrue interest at a rate of 006.00% per annum.**" This is a direct threat that the amount allegedly owed by Plaintiff will increase over time. This not only pressures Plaintiff to pay but also improperly attempts to penalize her for withholding

payment—despite the fact that the debt had been timely disputed in writing and Plaintiff had unequivocally instructed Defendant to cease communication. The interest threat was not neutral informational content; it was a tool of leverage used to extract payment by implying that further delay would result in an increased financial burden.

Moreover, the March 18, 2024 letter explicitly directs Plaintiff to contact Defendant to make payment when it states, "**Please remit the balance in full of $1061.38 or contact our office to discuss this debt.**" This is not the conduct of a party merely responding to a verification request under § 1692g(b)—particularly when Plaintiff never requested verification - it is affirmative debt collection conduct. Taken together, the express assertion of collection intent, the improper threat of accruing interest, and the call-to-action demanding payment demonstrate that this letter was a dual-purpose communication: one that may have included documents claimed to verify the debt, but whose overriding character and purpose was to resume collection activity in violation of 15 U.S.C. § 1692c(c).

The March 18, 2024 collection letter also contains a materially false statement: it asserts that Plaintiff made a request to validate the debt when it says in part, "**In reference to your recent request, please find enclosed validation of debt you requested with LEXI APTS (MN).**" That is not true. Plaintiff's March 2, 2024 written communication did not request validation under 15 U.S.C. § 1692g(b); rather, she explicitly and unequivocally stated that she disputed the debt in its entirety and directed Defendant to cease all communication. ECF 21-1. The FDCPA requires debt collectors to be truthful and accurate in their representations to consumers. Mischaracterizing Plaintiff's cease-and-

desist letter as a request for verification is not only misleading, it creates a false justification for reinitiating contact that had been lawfully terminated by the consumer. This misrepresentation further underscores that the March 18 letter was not a neutral informational response but an unauthorized and deceptive attempt to resume collection activity in violation of 15 U.S.C. § 1692c(c). Plaintiff's short cease and desist letter said:

March 2, 2024

Via Certified Mail

IQ Data International
P.O. Box 340, Bothell, WA 98041-0340
Phone: 888-248-2509 est. 1358

**RE:** Faith Stekly

Dear IQ Data International,

I, Faith Stekly vehemently dispute the balance and existence of this debt amount in its entirety.

The collection of $1,100 as stated by your company is related to a charge from Lexi Apartments where there is no basis in fact or law for the charge or collection of such an amount.

Neither your company, or the original creditor, is entitled to payment of the amount claimed. If the landlord had taken legal action on these claims, which the landlord has not, I would have presented a strong and defensible legal position against this claim.

Please cease all collection activities immediately.

You may send any further correspondence to me over email at faithelizs@icloud.com.

Sincerely,
(Ink Signature)
Faith E. Stekly

ECF 21-1.

Defendant attempts to rely on the fact that Plaintiff included an email address in her March 2, 2024 dispute letter and asserts that she stated correspondence could be sent there. Even assuming, arguendo, that were true, Defendant ignored her request for communication only by email and instead sent out a letter by U.S. Mail. Under Regulation F, consumers have the right to control the manner in which debt collectors communicate with them, and those preferences must be respected. *See* 12 C.F.R. § 1006.6(b)(1)(ii) cmt. 1.iii (2022).

In her cease-and-desist letter, Plaintiff exercised that very right by specifying that the only permissible manner in which Defendant could communicate with her—if at all— was by email, and only regarding matters permitted by law. Rather than honor that instruction, Defendant disregarded it entirely and mailed a physical letter to her home. This was not only an unauthorized method of communication, but it was also a direct violation of both Plaintiff's stated preferences and the obligations imposed by Regulation F. Debt collectors are not free to ignore consumer directives and revert to disfavored communication channels; doing so contravenes 12 C.F.R. § 1006.6(c). Defendant's conduct in sending the March 18, 2024 letter by mail—contrary to Plaintiff's express limitation—is an additional, independent violation of the FDCPA. 15 U.S.C. § 1692c(c).

Plaintiff's express language limiting communication to "any further correspondence" did not revoke the cease communication demand. Under § 1692c(c), a debt collector must cease "further communication with the consumer with respect to such

debt." The statute does not authorize circumvention of a cease demand merely because a consumer provides a preferred contact method. The only exceptions to further communications permitted are those set forth in the statute itself—none of which apply here.

Defendant's assertion that Plaintiff invited further communication by stating a preferred contact method ignores the mandatory restrictions of 15 U.S.C. § 1692c(c). Once a consumer issues a written cease communication directive—especially one that includes a full dispute of the debt—the statute strictly limits permissible follow-up communications. Plaintiff's inclusion of an email address for lawful notices does not override the statutory prohibition on further collection activity. Defendant's attempt to reframe the letter as an invitation to collect is both disingenuous and legally baseless.

Under 15 U.S.C. § 1692c(c), once a consumer notifies a debt collector in writing that they refuse to pay a debt or that they wish the debt collector to cease further communication, the debt collector must stop all collection, subject to three narrow exceptions. The statute provides that after such a cease communication request, the debt collector may only communicate with the consumer: (1) to advise that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked; or (3) to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. These three exceptions are construed strictly and are not a license for debt collectors to continue communicating under the guise of verification or "informational" purposes when the true intent remains to collect.

Moreover, each of these permitted communications must be narrowly tailored to its statutory purpose. A letter informing a consumer that collection efforts have ceased must not contain language suggesting payment is still expected. A communication stating that the creditor "may invoke specified remedies" must do no more than notify the consumer of legal remedies that may be pursued; it cannot urge or pressure the consumer to take action or make payment. Likewise, a letter stating the creditor "intends to invoke" legal remedies must identify those remedies and reflect a genuine intent—not merely serve as a veiled attempt to reinitiate collection. Courts consistently hold that any communication exceeding the scope of these narrow statutory allowances—especially those that threaten additional charges, demand payment, or otherwise seek to collect—violates § 1692c(c).

> The letters sent to Hagen, however, did not express an intent to pursue formal procedures or remedies. Rather, their purpose was to seek repayment without resorting to litigation.

*Hagen v. Messerli & Kramer, P.A.,* 85 F. Supp. 3d 1028, 1031 (D. Minn. 2015). Much like in *Hagen*, Defendant repeatedly referred to the payment of this debt in its March 18, 2024, collection letter and warned Plaintiff of the consequences of non-payment, namely, the piling on of interest. Without a doubt, this was an attempt to collect a debt by Defendant which violated 15 U.S.C. §1692c(c).

While Defendant may argue that its March 18, 2024, letter complied because it responded with so-called "verification," what it actually did was send unsolicited documents and demand payment, all under the guise of compliance. The mere fact that a particular collection letter may have served two distinct purposes--one permissible while the other illegal--does not excuse the FDCPA violation. It strains credulity to suggest that

if half of their collection letter complies with the FDCPA but the other half doesn't, so there's no violation. Defendant's actions are not mere technical missteps—they are a direct violation of a statutory command, and for that, Defendant is strictly liable under § 1692c(c).

**II. DEFENDANT'S INTEREST CHARGES VIOLATE 15 U.S.C. § 1692f(1)**

**Minn. Stat. § 549.09**

- **Interest Rate**: 2% above the secondary market yield for one-year U.S. Treasury bills (minimum 4% per year).

- **Why Not Applicable**: Interest under § 549.09 is only available after a lawsuit has been filed and a judgment has been entered. No judgment for this debt exists in this case.

**Minn. Stat. § 334.01**

- **Interest Rate**: 6% per year for legal indebtedness, unless otherwise contracted in writing.

- **Why Not Applicable**: Interest under § 334.01 is not available because the alleged debt is disputed, fact-dependent, unliquidated, and would require a jury to determine any amount owed.

Defendant's reliance on *Hill v. Accounts Receivable Services, LLC*, 888 F.3d 343 (8th Cir. 2018), is misplaced. Defendant admits that it sent a letter indicating that 6% per annum interest would accrue on the alleged debt. Defendant contends this is lawful under Minn. Stat. § 334.01 and that *Hill* bars Plaintiff's claim. That is simply incorrect. Minnesota law does not permit a third-party debt collector to unilaterally add prejudgment interest to a consumer debt unless the amount is expressly authorized by contract or judgment. *See*

Minn. Stat. § 549.09 and § 334.01. Here, Defendant points to no lease language authorizing interest. The Apartment Lease attached to Defendant's own letter is silent on interest. And Defendant does not have a judgment.

Furthermore, the facts and procedural posture of *Hill* differ fundamentally from those presented in *this case.* In *Hill*, the debt collector filed a conciliation court complaint—i.e., a legal pleading in a judicial proceeding—seeking interest under Minn. Stat. § 334.01. The Eighth Circuit held that because Minnesota law had not clearly foreclosed the recovery of such interest in a court action, and because the issue remained unresolved by the Minnesota Supreme Court, the collector's attempt to include interest in a state court *pleading* was not per se unfair or unconscionable under 15 U.S.C. § 1692f(1).

By contrast, Defendant here made its interest demand not in a judicial pleading but in a non-attorney, third-party collection letter sent directly to Plaintiff after she had vigorously disputed the debt in writing and demanded that Defendant cease all communication. The debt was neither reduced to judgment nor the subject of any pending state court litigation. It was an actively contested post-tenancy balance—disputed in whole—and therefore unliquidated. Defendant's unilateral addition of 6% interest to such a disputed debt, without any legal adjudication, written contractual basis, or court process, is precisely the type of extrajudicial conduct the FDCPA was intended to prohibit. Unlike the collector in *Hill*, who sought interest in a court filing where defenses could be asserted and adjudicated, Defendant here circumvented the judicial process entirely, acting as both litigant and adjudicator in imposing interest on its own terms. This conduct falls squarely

within the type of unfair practice proscribed by 15 U.S.C. § 1692f(1). This is consistent with other Eighth Circuit on point.

> We now hold that a false representation of the amount of a debt that overstates what is owed under state law materially violates 15 U.S.C. § 1692e(2)(A) as well.

*Coyne v. Midland Funding LLC,* 895 F.3d 1035, 1038 (8th Cir. 2018). Plaintiff has specifically alleged that this was an unliquidated amount and therefore Defendant's inclusion of improper interest overstated the amount of the alleged debt under state law. Under *Coyne*, this violates the FDCPA. By asserting that "interest will accrue" on an unliquidated and disputed balance, Defendant manufactured a false sense of urgency that was legally unjustified. This language creates the misleading impression that Plaintiff's balance would grow with each passing day, despite the absence of any statutory, contractual, or judicial basis for such accrual. Courts have repeatedly held that the use of unauthorized interest to inflate a balance and pressure payment is both deceptive and materially misleading under 15 U.S.C. §§ 1692e(2)(A) and 1692f(1).

Contrary to Defendant's argument, *Hill* also does not permit blanket interest charges in all cases. In *Hill*, the Eighth Circuit emphasized that whether § 334.01 applies is a question of Minnesota law and found no FDCPA violation where the collector sought interest in a *state court pleading*—not in an initial collection letter to a consumer. *Hill*, 888 F.3d at 344–45. The FDCPA claim here is not based on whether the creditor might ultimately recover interest in a lawsuit, but on whether it may state to the consumer, in an unsolicited collection letter, that interest "will accrue" when there is no legal basis for such a representation, especially given that this debt was disputed and unliquidated. Minnesota

courts have long held that prejudgment interest under Minn. Stat. § 549.09 is not available on unliquidated claims where the damages are not readily ascertainable by computation or are dependent in whole or in part on the discretion of a jury. *See Dear v. Minneapolis Fire Dept. Relief Ass'n*, 481 N.W.2d 69, 73 (Minn. Ct. App. 1992), *aff'd* as modified, 485 N.W.2d 145 (Minn. 1992); *Noble v. C.E.D.O., Inc.*, 374 N.W.2d 734, 743 (Minn. Ct. App. 1985); *Baufield v. Safelite Glass Corp.,* 831 F. Supp. 713, 719 (D. Minn. 1993).

The FDCPA prohibits the collection of any amount unless that amount is "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). A lease that is silent as to interest does not authorize interest—silence is not authorization. Where the agreement makes no reference to interest, no collector may invent it. Defendant's attempt to impose a 6% interest rate despite the lease's complete omission of any interest term violates § 1692f(1) as a matter of law. Likewise, *Hogenson v. Hogenson*, 852 N.W.2d 266 (Minn. Ct. App. 2014), does not support Defendant's position; it confirms that Minn. Stat. § 334.01 permits prejudgment interest only where damages are liquidated or readily ascertainable, not where—as here—the amount of the debt is disputed, fact-dependent, and contingent on jury determinations.

Given Plaintiff's clear and unequivocal dispute of the alleged landlord-tenant debt—including disagreements over issues such as repainting costs, the adequacy of move-out notice, cleaning and repair charges, and the improper withholding of her security deposit—it is indisputable that the amount, if any, owed is a contested factual matter. The debt in question is not only disputed, but also fact-dependent and requires resolution of multiple contested factual issues—including whether Plaintiff provided proper move-out

notice, whether repainting or cleaning was necessary, and whether any damages were caused beyond normal wear and tear. These are not amounts that can be computed by formula or derived from objective standards. They must be resolved by a finder of fact, not a calculator.

Courts have consistently found that asserting the right to interest in collection letters—particularly where not grounded in the contract—constitutes an unfair or misleading collection practice. The Minnesota Court of Appeals stated

> **Awards of preverdict interest** "are designed to serve two functions: (1) to compensate prevailing parties for the true cost of money damages incurred, and (2) to promote settlements **when liability and damage amounts are fairly certain** and deter attempts to benefit unfairly from delays inherent in litigation." *Solid Gold Realty, Inc. v. Mondry*, 399 N.W.2d 681, 683 (Minn. App. 1987).

*Blehr v. Anderson,* 955 N.W.2d 613, 618 (Minn. Ct. App. 2021) (emphasis added). In the case of the Defendant's collection letter to Plaintiff on March 18, 2024, there was no verdict,[1] the debt was vehemently disputed by Plaintiff, and the damages were anything but certain. Applying Minn. Stat. § 334.01, subd. 1 to a landlord-tenant debt in Minnesota, such as a landlord asserting a former tenant owes money after move-out for things like repairs or cleaning, the statutory prejudgment interest rate would be 6% per annum—but only if the debt qualifies as a "legal indebtedness" and is not disputed in amount. This provision establishes a 6% per annum default interest rate for legally enforceable debts where the amount due is certain or undisputed. However, Minnesota courts have long held

---

[1] Defendant could not have obtained a verdict entitling it to interest under either Minn.Stat §549.09 or §334.01 because it is not a law firm and does not own even own the underlying debt—despite having improperly made a counterclaim in set-off for it has now withdrawn.

that prejudgment interest is only available when the claim is for a liquidated sum or an amount readily ascertainable by computation or objective standards:

> The jury returned a general verdict. It was impossible for defendant to know how much he must pay until the jury had assessed the damage. **Where the amount of liability has not been ascertained, there is no liability for interest thereon prior to the time of its ascertainment.**[6] The right to interest here is governed by Minn.St. 549.09.

*Emps. Liab. Assur. Corp. v. Morse,* 261 Minn. 259, 267, 111 N.W.2d 620, 626 (1961) (emphasis added; footnote omitted). In denying prejudgment interest under § 334.01 because the amount of a claim was not readily ascertainable, one Minnesota federal court held:

> Bitronics also seeks prejudgment interest. The law in Minnesota is that interest is allowed on an unliquidated claim that is readily ascertainable by computation, or by reference to generally recognized objective standards of measurement, and that does not depend upon any contingency. ...
>
> Bitronics' claim was not readily ascertainable because it was uncertain as to time, quantity, and rate. … This made the claim unliquidated and also made the amount owing not readily ascertainable. Accordingly, Bitronics' demand for prejudgment interest from the "applicable date" for interest at nine percent under *Minn.Stat.* § 549.09, subd. 1(c) through February 4, 1985; and "prior to the applicable date" for interest at six percent under *Minn.Stat.* § 334.01, shall be denied.

*Bitronics Sales Co. v. Microsemiconductor Corp.,* 610 F. Supp. 550, 555 (D. Minn. 1985).

In the context of landlord-tenant disputes—especially those involving subjective charges like termination fees, repainting, carpet replacement, or cleanliness—the amount allegedly owed is often fact-dependent and not determinable without testimony or evidentiary findings. If the tenant disputes the debt, as Plaintiff did in this case, the claim

is not readily ascertainable and is unliquidated. As a result, Minn. Stat. § 334.01 simply does not authorize prejudgment interest on that disputed amount. [2]

Defendant's reliance on Minn. Stat. § 334.01 fails because the statute applies only to "legal indebtedness"—a term that presupposes the existence of an enforceable, adjudicated obligation. Under Minnesota law, when a consumer disputes the entire existence of a debt—as Plaintiff did here—the obligation is not liquidated, not adjudicated, and therefore not a legal indebtedness within the meaning of § 334.01. Until a court determines what, if anything, is owed, there is no lawful basis for any interest accrual under this statute. Defendant cannot unilaterally elevate a disputed and unliquidated claim to the status of a legal indebtedness simply by asserting it. Defendant's unilateral addition of interest in an unsolicited collection letter, while knowing the debt was disputed, misrepresents the true amount of the debt and materially misleads the consumer in violation of 15 U.S.C. § 1692f(1).

Defendant's reliance on *Klein* is similarly unavailing. *Klein v. Credico Inc.*, 922 F.3d 393 (8th Cir. 2019). That case addressed a fundamentally different scenario involving a legally distinct type of communication. In *Klein*, the debt collector merely suggested that if legal action were taken and a judgment entered, such a judgment could include

---

[2] In 2002, one district court found no violation of the FDCPA when a debt collector added 6% interest on a *liquidated* debt relying on Minn.Stat. §334.01. *Egge v. Healthspan Servs. Co.*, No. CIV. 00-934 ADM/AJB, 2002 WL 31426190, at *6 (D. Minn. Oct. 28, 2002). *Egge* is entirely distinguishable from the present case. The amount being collected by Defendant from Plaintiff in this case was unliquidated and disputed and therefore that provision of Minnesota law and its ensuing analysis is inapplicable in this case.

prejudgment interest. The letter in *Klein* did not claim that interest was already accruing, did not add interest to the balance demanded, and did not assert that any such interest was currently owed. Rather, the communication was limited to a conditional and prospective statement about what might be awarded by a court at some later time.

In stark contrast, Defendant in this case unilaterally added prejudgment interest at a rate of 6% per annum to a disputed and unadjudicated consumer debt. The March 18, 2024, collection letter does not condition interest on a future judgment or court approval—it plainly asserts that interest has and *will continue to accrue* on the alleged principal balance, and it incorporates that interest into the amount demanded from Plaintiff. This was not a theoretical reference to a possible court award. It was a present-tense imposition of interest by a third-party debt collector acting without a judgment, without contractual authority, and without any legal determination that Plaintiff owed anything at all.

The contrast is further sharpened by the conduct of the parties. In *Klein*, the collector acknowledged the proper procedural posture by referring the matter to a future judicial determination. Here, Defendant has inserted itself as both litigant and adjudicator by asserting not only that the full balance is owed, but that it is entitled to impose interest immediately, without court approval, without an attorney, without owning the debt, and in the absence of any controlling lease provision or judgment. That action—asserting the power to award itself interest on a disputed and unliquidated debt—goes far beyond the conduct that the Eighth Circuit permitted in *Klein*, and falls squarely within the scope of what the FDCPA was intended to prohibit.

The Eighth Circuit in *Klein* expressly noted that the Minnesota Supreme Court had not yet addressed whether Minn. Stat. § 334.01 applied to the type of debt at issue in *Klein*, leaving the legal question unresolved in <u>that</u> case. In contrast, the Minnesota courts have clearly and consistently held that § 334.01 does not apply to unliquidated debts—those that are disputed in amount or liability and require factual determinations by a jury.

> Minnesota law precludes an award of prefiling interest where the factfinder must resolve such contingencies. *Hutchinson Util. Comm'n v. Curtiss–Wright Corp.,* 775 F.2d 231, 242 (8th Cir.1985); *Unique Sys., Inc. v. Zotos Int'l, Inc.,* 622 F.2d 373, 379–80 (8th Cir.1980).

*Ventura v. Titan Sports, Inc.,* 65 F.3d 725, 735 (8th Cir. 1995). Plaintiff's alleged debt falls squarely within this category. Because Plaintiff's liability is vehemently disputed and the amount allegedly owed is not readily ascertainable by computation or objective standards, prejudgment interest under § 334.01 is categorically unavailable.

## III. PLAINTIFF HAS STANDING

Finally, Defendant's attempt to challenge standing fails. A consumer who receives a debt collection letter that violates § 1692c(c) and § 1692f(1) suffers an injury in fact sufficient to confer Article III standing. The FDCPA was enacted to protect consumers' concrete interests in privacy and truthful financial communication. 15 U.S.C. § 1692. Defendant's contention that Plaintiff lacks standing because she did not pay the disputed interest is legally and factually unsupported. Article III standing requires only that a plaintiff allege (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) likely to be redressed by a favorable judicial decision. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021)

("…[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.") Plaintiff's First Amended Complaint satisfies this standard.

The Eighth Circuit explicitly recognized the violations of the FDCPA by a debt collector who misrepresents facts can cause reasonable people distress and concrete harm. *Demarais v. Gurstel Chargo, P.A.,* 869 F.3d 685, 692 (8th Cir. 2017). In her amended complaint, Plaintiff plausibly alleges that she suffered actual and concrete harm as a direct result of Defendant's unlawful debt collection practices, including emotional distress, reputational damage at work, the cost of retaining legal counsel, and the time and resources expended responding to and disputing a misleading and unlawful debt collection letter. ECF #9. These injuries are not speculative or abstract. They are classic examples of concrete, particularized harms that flow from violations of substantive statutory rights under the FDCPA.

Plaintiff's harms are also distinguishable from the cases relied on by Defendant, in which plaintiffs alleged procedural violations or received collection letters that had no real-world impact. Here, Plaintiff was forced to respond to unlawful conduct: she incurred financial costs for legal advice, suffered workplace embarrassment when Defendant contacted her employer, and endured emotional and reputational damage due to false credit reporting—all resulting from Defendant's FDCPA violations. These harms are tethered to traditionally recognized bases for relief under common law, including invasion of privacy,

intentional infliction of emotional distress, and defamation, satisfying the "close relationship" test established in *Ramirez* and *Spokeo*.

Plaintiff has also demonstrated concrete economic harm by incurring direct out-of-pocket expenses to exercise her rights under the FDCPA. Specifically, Plaintiff paid to send a certified letter to Defendant disputing the debt and demanding that all further communications cease. This act was not gratuitous—it was required under federal law to invoke the protections of 15 U.S.C. § 1692c(c). Despite this clear and lawful exercise of her statutory rights, Defendant violated the FDCPA by continuing to contact Plaintiff and attempting to collect the disputed debt. The $5.08 cost of sending that certified letter, constitutes an actual economic injury directly traceable to Defendant's unlawful conduct. See ECF #21-1. Moreover, Plaintiff has competently alleged that she incurred additional litigation costs in seeking legal advice as to her rights under the FDCPA. See #9, ¶119. The financial burden associated with asserting her rights—coupled with the failure of Defendant to honor those rights—forms an independent basis for standing under Article III.

Very recently, in *Ebaugh v. Medicredit, Inc.*, No. 24-1838, 2025 WL 1088077, at *1 (8th Cir. Apr. 11, 2025), the Eighth Circuit held that a consumer's purchase of postage to forward an improper debt collection letter to her attorney constituted a concrete injury sufficient to establish Article III standing, as it was a direct consequence of the FDCPA violation and necessary to reassert her legal rights. *Ebaugh v. Medicredit, Inc.,* No. 24-1838, 2025 WL 1088077, at *1 (8th Cir. Apr. 11, 2025). *See also Church v. Accretive*

*Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (FDCPA violation resulting in informational and procedural harms sufficient for standing).

Article III does not require economic loss—even though Plaintiff has it—it requires only an actual injury. Plaintiff has pled multiple such injuries, any one of which is sufficient to confer standing.

## IV. CONCLUSION

Defendant's March 18, 2024 letter violated 15 U.S.C. § 1692c(c) by continuing collection activity after Plaintiff's written refusal to pay and cease demand. The inclusion of unauthorized interest charges in the same letter further violated § 1692f(1).

Respectfully submitted,

Dated: April 27, 2025

**THE BARRY LAW OFFICE, LTD**

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone:  (612) 379-8800
pbarry@lawpoint.com

**SAVAGE-WESTRICK, PLLP**

Samuel A. Savage, Esq.
Attorney I.D.# 0395638
900 American Blvd. East, Suite. 241
Bloomington, MN 55420
Telephone: (651) 292-9603
Fax: (651) 395-7423
savage@savagewestrick.com

*Attorneys for Plaintiff*