**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Faith Stekly,<br><br>    Plaintiff,<br><br>v.<br><br>I.Q. Data International, Inc., and<br><br>Liberty Mutual Insurance Company,<br><br>    Defendants. | Case No.: 0:25-cv-216-ECT-DLM<br><br>~~FIRST~~ SECOND **AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by Defendants and their collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

3.      Jurisdiction of this Court arises under U.S.C. § 1692k(d), and 28 U.S.C. § 1367 for pendent state law claims.

4.      Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and Defendants transact business here.

5.      Defendant IQDI and its collection employees have transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone, the mails, and/or through the use of email while Plaintiff was located within and permanently residing within the State of Minnesota.

6.      Defendant IQDI has transacted business within the State of Minnesota by operating a licensed collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

7.      Defendant IQDI has transacted business within the State of Minnesota by using means of interstate commerce to collect consumer debts from consumers in Minnesota, including Plaintiff, as well as being licensed to collect debts within this state.

8.      Defendant Liberty Mutual Insurance Company ("Liberty") is a corporation authorized to conduct business in the State of Minnesota and issues surety bonds for collection agencies operating within the state.

9.      This Court has jurisdiction over Defendant Liberty pursuant to 28 U.S.C. § 1331 and § 1367 because Plaintiff asserts claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and because Defendant Liberty Mutual's

obligations arise from its issuance of a statutory surety bond required under Minnesota law.

10. The Court also has jurisdiction over Defendant Liberty under Minn. Stat. § 332.34, which establishes the liability of sureties that issue bonds to debt collectors operating in the state.

11. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred within this District, and because Defendant Liberty Mutual Insurance Company issued a bond covering Defendant I.Q. Data International, Inc.'s conduct in the State of Minnesota.

## PARTIES

12. Plaintiff Faith Stekly (hereinafter "Plaintiff") is a natural person who resides in the County of Anoka, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

13. Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

14. Defendant I.Q. Data International, Inc. (hereinafter "Defendant IQDI") is a collection agency operating from a principal office address of 21222 30th Drive SE, Suite 120, Bothell, WA 98021, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

15. Defendant IQDI's registered agent of process in Minnesota is:

Corporation Service Company

2780 Snelling Avenue N, Suite 101

Roseville, MN 55113

16.    Defendant IQDI uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

17.    Defendant IQDI regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18.    Defendant IQDI and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff, as further described in this complaint.

19.    Defendant Liberty Mutual Insurance Company (hereinafter "Defendant Liberty Mutual") is an insurance company and surety bond provider authorized to conduct business in the State of Minnesota, with a principal office address of 175 Berkeley Street, Boston, MA 02116.

20.    Defendant Liberty Mutual's registered agent for service of process in is

Corporation Service Company

84 State St.

Boston, MA 02109

21.    Defendant Liberty Mutual issued a surety bond pursuant to Minn. Stat. § 332.34, which guarantees compliance with Minnesota law by licensed collection agencies, including Defendant I.Q. Data International, Inc.

22.    Defendant Liberty Mutual is obligated under the surety bond to cover damages suffered by individuals as a result of Defendant I.Q. Data International, Inc.'s

violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Minnesota Collection Agencies Act, Minn. Stat. § 332.31 et seq.

23. Defendant Liberty Mutual, by issuing a surety bond for Defendant I.Q. Data International, Inc., is directly and indirectly answerable for the unlawful efforts to collect an alleged debt from Plaintiff, as further described in this complaint.

## FACTUAL ALLEGATIONS

24. Within one year immediately preceding the filing of this complaint, Defendant IQDI attempted to collect from Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), by attempting to collect this debt from Plaintiff in the State of Minnesota.

25. Plaintiff allegedly incurred a personal debt from Lexi Apartments, Roers Companies, related to apartment rental services ("Debt").

26. The Debt was incurred for personal, family, or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5).

27. On or about February 13, 2024, Defendant IQDI began attempting to collect the Debt from Plaintiff.

28. Plaintiff disputes this alleged Debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this Debt and to the claims made herein.

29. Sometime thereafter, the Debt was consigned, placed or otherwise transferred to Defendant IQDI for collection from Plaintiff.

***Defendants' Illegal Collection Calls***

30. On or around February 20, 2024, Defendant IQDI called Plaintiff's place of employment and left a message for Plaintiff with her supervisor requesting a collection call back in an attempt to collect this Debt.

31. This was a "communication" in an attempt to collect a debt under the FDCPA.

32. Plaintiff was employed at International Paper.

33. Defendant IQDI called her employer and left a message with Plaintiff's supervisor "Sam" that included the name "Rachel from I.Q. Data" and the phone number 888-248-2509 ext. 1358.

34. Later, Plaintiff's supervisor Sam approached her and told her that she needed to for sure call this debt collector back.

35. Defendant IQDI's call to Plaintiff's workplace directly resulted in reputational harm and workplace embarrassment.

36. Plaintiff was forced to address this situation with her supervisor, causing distress and professional discomfort.

37. Defendant IQDI's unauthorized disclosure of debt collection information at her place of employment constitutes a violation of 15 U.S.C. § 1692c(b).

38. Plaintiff called Defendant IQDI back either that day or the following and verbally disputed the Debt and told them to stop contacting her employer.

39. Later, Plaintiff again disputed this debt and instructed Defendant IQDI to cease and assist any further contact with her regarding it by sending it a certified letter on her around March 2, 2024, which stated:

March 2, 2024

Via Certified Mail
IQ Data International
P.O. Box 340, Bothell, WA 98041-0340
Phone: 888-248-2509 ext. 1358

RE: Faith Stekly

Dear IQ Data International,

I, Faith Stekly vehemently dispute the balance and existence of this debt amount in its entirety.

The collection of $1,100 as stated by your company is related to a charge from Lexi Apartments where there is no basis in fact or law for the charge or collection of such an amount.

Neither your company, or the original creditor, is entitled to payment of the amount claimed. If the landlord had taken legal action on these claims, which the landlord has not, I would have presented a strong and defensible legal position against this claim.

Please cease all collection activities immediately.

You may send any further correspondence to me over email at **XXXXXXXXXX@icloud.com.**

Sincerely,
[*Ink Signature*]
Faith E. Stekly

40.    Thereafter, after receiving this Certified Letter on March 11, 2024, rather ceasing its debt collection activities as required under the FDCPA, Defendant IQDI continued to try to collect this Debt and sent Plaintiff a written demand for the payment of it on or around March 18, 2024, violating 15 U.S.C. § 1692c(c) by

attempting further collection despite a clear written request to cease communication and a written dispute of the debt.

41. Defendant IQDI's March 18, 2024, communication also falsely threatened to add interest at the rate of 6% per annum to this Debt, despite the fact that no such interest was due and owing on this disputed debt.

42. No court had adjudicated this Debt or Defendant IQDI's right to add pre-judgment interest to it.

43. This collection communication described above violated the FDCPA because Defendant IQDI's collectors misstated the law to Plaintiff, misstated the Plaintiff's rights to dispute this Debt, and misstated the factual basis for the alleged debt.

44. Defendant IQDI's conduct also violated the FDCPA because it was a threat to report false credit information about Plaintiff, namely, that she owed this Debt when she in fact had disputed it, all done in violation of 15 U.S.C. § 1692e(8).

45. This collection communication described above violated the FDCPA because Defendant IQDI's collectors engaged in harassing, oppressive, and abusive tactics to pressure Plaintiff into paying a debt that she does not owe and for which she disputes.

46. These collection communications and conduct from Defendant IQDI's collection employees toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(c), 1692d, 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10),

1692e(11), 1692f, 1692f(1), and the FDCPA's enabling regulation, Reg. F, amongst others, as well as violations of Minnesota law.

### *Additional Calls to Employer After Being Told to Stop*

47. Defendant IQDI continued to call Plaintiff's employer even after being told to stop in an attempt to collect this debt.

48. The FDCPA prohibits Defendant IQDI from continuing to call a consumer's workplace after being told to stop.

49. Plaintiff told Defendant IQDI to stop calling her workplace.

50. Plaintiff told Defendant IQDI to cease communications with her entirely and sent that demand by certified mail that was received and signed for by Defendant IQDI.

51. These collection communications and conduct from Defendant IQDI's collection employees toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692c(c), 1692d, 1692d(5), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692e(11), 1692f, 1692f(1), and the FDCPA's enabling regulation, Reg. F, amongst others, as well as violations of Minnesota law.

### *Additional FDCPA Violations Arising from Defendant I.Q. Data's Debt Collector Rachel's Communications with Plaintiff's Employer*

52. On or about February 20, 2024, Defendant IQDI, through its collection employee Rachel, called Plaintiff's place of employment and falsely stated to Plaintiff's supervisor that the call concerned paperwork that Plaintiff was attempting to

complete in Rachel's office, rather than disclosing the true purpose of the call—which was to collect a consumer debt from Plaintiff.

53. This misrepresentation by Rachel was made to a third party in violation of 15 U.S.C. § 1692e, which prohibits false, deceptive, or misleading representations in connection with the collection of a debt.

54. Defendant IQDI, through Rachel, also communicated with a person other than Plaintiff—namely, Plaintiff's supervisor—without having obtained Plaintiff's prior consent or a court order, and without a legitimate purpose permitted under 15 U.S.C. § 1692b.

55. The content of Rachel's statements to Plaintiff's supervisor went beyond merely seeking location information and included a false explanation of the reason for the call, thereby violating 15 U.S.C. § 1692c(b).

56. During the call with Plaintiff's supervisor, Defendant IQDI's employee Rachel voluntarily disclosed that she was calling from IQ Data without being specifically asked for the name of her employer.

57. This disclosure was made in violation of 15 U.S.C. § 1692b(1), which prohibits a debt collector from stating the name of their employer when communicating with any person other than the consumer, except as required to effectuate a permissible communication under that section.

58. Rachel's call to Plaintiff's supervisor caused reputational damage and workplace embarrassment and was made without lawful justification or authorization under the FDCPA.

59. Leaving a message with Plaintiff's employer—specifically with a first-shift supervisor who expressly stated that Plaintiff was not present because she worked second shift—was a calculated attempt by Defendant IQDI's collector Rachel to coerce Plaintiff into returning the call.

60. This conduct not only improperly involved Plaintiff's employer in the collection process, it also enlisted the participation of two separate supervisors: the first-shift supervisor who took the message and Plaintiff's actual supervisor who was later instructed to relay it.

61. This tactic is abusive on its face and constitutes a form of workplace interference that courts have routinely found to violate the FDCPA.

62. By using the workplace as a pressure point to provoke a response from Plaintiff, Rachel engaged in a knowingly improper form of collection activity.

63. Moreover, Rachel's disclosure that she was calling from IQ Data further violated the FDCPA, as the statute expressly forbids debt collectors from revealing their employer's identity to third parties unless specifically asked.

64. Abusive debt collection practices, including unauthorized contact with a consumer's employer, can and do lead to job loss.

65. When Congress enacted the Fair Debt Collection Practices Act in 1977, effective March 20, 1978, it expressly found that such abusive practices contribute to the loss of employment. 15 U.S.C. § 1692.

66. Congress recognized that the unauthorized disclosure of debt-related information in the workplace places consumers at risk of embarrassment, reputational harm, and

potential termination, and enacted 15 U.S.C. § 1692c(b) to prevent debt collectors from intruding into consumers' professional lives.

67. The FDCPA strictly limits third-party communications by debt collectors and does not permit debt collectors to contact a consumer's employer in an effort to collect a debt.

68. Under 15 U.S.C. § 1692b, a debt collector may only contact a third party for the limited purpose of obtaining "location information," defined narrowly as the consumer's home address, telephone number, or place of employment.

69. Even then, the statute prohibits disclosing the collector's identity or the purpose of the call.

70. Nowhere in the FDCPA is there any authority for a debt collector to call a consumer's workplace to demand payment, leave messages, or otherwise involve an employer in the collection process.

71. Doing so constitutes an unlawful third-party disclosure and an abusive collection tactic in violation of multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(1) (unauthorized disclosure of the debt collector's identity), 1692c(b) (unauthorized communication with a third party), 1692d (oppressive and harassing conduct), 1692e (false and misleading representations), 1692e(10) (false representation regarding the nature or purpose of the communication), 1692e(11) (failure to disclose that the communication was from a debt collector), and 1692f (unfair or unconscionable means to collect a debt), including 1692f(1) (attempt to collect amounts not permitted by law).

*Inbound Calls from Plaintiff to Collector Rachel Following Employer Contact*

72.    Later that morning on or about February 20, 2024, after learning that a collector from Defendant IQDI had contacted her employer, Plaintiff called back to speak with someone at IQ Data regarding the unauthorized communication, and again after she was disconnected from the first call.

73.    Each time, Plaintiff was ultimately connected to the same collector, Rachel, who had placed the call to her supervisor earlier that day.

74.    Plaintiff expressly told Rachel and another IQDI collector, Ayla Fox, during follow-up calls that contacting her employer was illegal and must cease.

75.    Plaintiff also informed them that she disputed the debt and would be sending a written dispute, which she subsequently did by certified mail.

76.    Despite being told to stop, Defendant IQDI's collectors continued to contact Plaintiff, and in doing so failed to include the disclosures required under 15 U.S.C. § 1692e(11), which mandates that all communications include a meaningful disclosure that the caller is a debt collector and that the purpose of the communication is to collect a debt.

77.    At no point during these communications did Defendant IQDI's collectors affirmatively state that they were debt collectors attempting to collect a debt and any information obtained would be used for that purpose and/or that the communication was from a debt collector in violation of 15 U.S.C. § 1692e(11).

78.    These acts and omissions by Defendant IQDI's employee Rachel violated multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(1)

(unauthorized disclosure of employer's name), 1692c(b) (unauthorized third-party communication), 1692d (oppressive conduct), 1692e (false and misleading representations), 1692e(10) (false representation regarding the nature of the call), 1692e(11) (failure to provide required disclosures), and 1692g(b) (continued collection activity after verbal dispute), and caused Plaintiff to suffer additional stress, reputational harm, and emotional distress.

### *Unlawful Third-Party Contact Attempt to Plaintiff's Mother*

79.    Again on or about February 20, 2024, Defendant IQDI also placed a separate call to Plaintiff's mother in connection with its efforts to collect this alleged debt.

80.    Plaintiff's mother had no knowledge of the debt and had not been designated or authorized by Plaintiff to receive any communications from Defendant regarding this matter.

81.    At the time of this call, Defendant IQDI had already obtained Plaintiff's home address, home telephone number, and place of employment.

82.    As such, Defendant had no lawful basis under the FDCPA to contact any third party for "location information" or any other purpose.

83.    The call to Plaintiff's mother was not an attempt to verify Plaintiff's whereabouts, but rather a tactic used to exert additional emotional pressure on Plaintiff to respond and initiate contact with Defendant IQDI.

84.    This contact by Defendant IQDI with Plaintiff's mother constituted a clear and impermissible communication with a third party in violation of 15 U.S.C. § 1692c(b).

85. Plaintiff is a competent adult who has not authorized any party—including her parents—to receive communications on her behalf regarding alleged financial obligations.

86. The FDCPA provides no allowance for a debt collector to involve a consumer's family members in the collection process absent prior consent or court order. No such consent or court order existed here.

87. The call to Plaintiff's mother also constituted an invasion of Plaintiff's privacy and an abusive collection tactic expressly condemned by Congress when it enacted the FDCPA.

88. As part of its legislative findings, Congress recognized that abusive debt collection practices, such as third-party contacts, can result in family conflicts, including marital instability, and that such practices represent a serious invasion of individual privacy. 15 U.S.C. § 1692(a) ("There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.")

89. Defendant IQDI's call to Plaintiff's mother violated multiple provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692b(1) (improper contact with third parties under the guise of location information), 15 U.S.C. § 1692c(b) (unauthorized third-party communication), 15 U.S.C. § 1692d (conduct the natural consequence of which is to harass, oppress, or abuse), 15 U.S.C. § 1692e (use of false, deceptive, or misleading representations in connection with the collection of

a debt), 15 U.S.C. § 1692e(10) (use of any false representation or deceptive means to collect a debt or obtain information), and 15 U.S.C. § 1692f (use of unfair or unconscionable means to collect or attempt to collect a debt).

90. This improper and unauthorized call to her mother caused Plaintiff emotional distress, embarrassment, and frustration, and constituted a direct violation of her federally protected right to keep her personal financial affairs private.

91. Defendant IQDI's conduct in placing calls to Plaintiff's workplace, her supervisor, and her mother—despite already possessing Plaintiff's valid home address, telephone number, and place of employment—is a textbook example of what is commonly referred to in the collections industry as a "dial-around."

92. A dial-around occurs when a debt collector contacts every phone number or third party potentially associated with the consumer, not for any legitimate location purpose, but to apply indirect pressure and coercion by involving others in the debt collection effort by asking to leave embarrassing messages and the like.

93. This strategy is designed to embarrass the consumer, generate urgency, and compel a return call by escalating the social and emotional consequences of non-payment.

94. It is precisely this kind of abusive and harassing conduct that Congress sought to prohibit when it enacted the FDCPA, and it stands in direct conflict with the statute's core protections against third-party disclosures and unfair collection practices.

### *Relation Back Doctrine Applies*

95. The relation-back doctrine supports the inclusion of these additional factual allegations and FDCPA violations because they arise out of the same conduct,

transaction, and occurrences set forth in the original complaint which was filed within one year of the FDCPA violations by Defendant IQDI.

96. Defendant IQDI was fully aware that its debt collection calls and third-party contacts were the subject of this litigation from the outset.

97. The original complaint explicitly challenged Defendant's unlawful efforts to collect a debt from Plaintiff through telephone communications and workplace contact.

98. The newly detailed allegations—regarding additional third-party calls to Plaintiff's mother, the misrepresentations made to Plaintiff's supervisor, and the coercive nature of Rachel's communications—all stem directly from that same course of collection activity and involve the same underlying debt.

99. Because the factual core of the claim remains unchanged, and because these new allegations simply provide further detail, newly disclosed, about the very same collection efforts that were already at issue, the relation-back doctrine under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure applies.

100. The additional claims do not introduce a new cause of action or unrelated conduct but instead expand upon the specific methods Defendant used in its unlawful collection attempts.

101. Defendant has thus suffered no prejudice and cannot reasonably claim surprise, as it was on notice from the original pleading that its telephone communications with Plaintiff and third parties were central to this case.

102.   Moreover, Defendant IQDI knew or should have known that its telephone calls—including those to Plaintiff's employer and her mother—would be scrutinized in litigation and that audio recordings of such calls would be discoverable evidence.

103.   As a licensed debt collector, Defendant IQDI routinely records its collection calls and maintains those records in the ordinary course of business.

104.   Defendant was therefore on clear notice, both legally and procedurally, that these recordings and the associated conduct would be examined as evidence of FDCPA violations.

105.   The inclusion of these additional allegations is not only proper, but also fully anticipated by the scope and theory of the original complaint.

51.

***Defendant IQDI Falsely Credit Reports the Account and Adds Illegal Interest Charges***

52.106.   After Plaintiff disputed this debt on her Trans Union Report, Defendant IQDI thereafter switched and then began reporting this alleged debt on Plaintiff's Equifax consumer report in a further effort to collect this debt, despite previously being told to stop.

53.107.   The FDCPA requires debt collectors to stop collection efforts if they are instructed to stop in writing by a consumer.  15 U.S.C. § 1692c(c).

54.108.   Defendant IQDI also illegally added interest to this debt and falsely reported interest as due and owing on this account on Plaintiff's consumer credit reports, despite the fact that Plaintiff vigorously disputed the basis and amount of this debt making it an unliquidated amount.

109.    Plaintiff disagreed with the Defendant IQDI's assertion about interest on this disputed Debt, never agreed to pay this interest or the principal amount and refused to pay this alleged debt.

110.    In October 2024, Plaintiff reviewed her consumer credit reports and noted an entry from Defendant IQDI on her report that indicated that this disputed $1,051 apartment fee Debt with Defendant IQDI had now inexplicably increased to $1,094.

111.    Defendant IQDI repeatedly illegally added interest and/or late fees on this alleged debt, increasing the debt from its original amount every time it reported the Debt to the bureaus.

112.    The FDCPA prohibits to addition of any amount over and above the principal amount of a debt unless that additional amount is permitted by the contract underlying the debt or otherwise permitted by law.

113.    Plaintiff never agreed to pay interest in any amount on this alleged Debt because she did not agree that she even owed the alleged debt for the apartment rental and disputed it.  See *Tate v. Ballard,* 243 Minn. 353, 360, 68 N.W.2d 261, 266 (1954) ("Liability for interest is purely contractual, and a person is not chargeable therewith unless he has agreed to its imposition. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473.")

114.    There was no agreement between Plaintiff and Defendant IQDI underlying this debt which permitted these collection fees by Defendant IQDI, and these fees are not otherwise permitted by law.

-19-

115. Defendant IQDI's demands from Plaintiff for payment for amounts not due and owing on this obligation was fraud, because it intended that Plaintiff would rely on its representations as to the amount of additional interest on the obligation, and Plaintiff in fact relied on those material misrepresentations to Plaintiff's detriment.

116. It was a false and deceptive debt collection practice for Defendant IQDI to misrepresent the amount due and owing by Plaintiff for this debt.

117. Defendant IQDI's addition of illegal interest as late charges to Plaintiff's alleged debt to Defendant IQDI was also a violation of numerous and multiple provisions of the FDCPA with respect to Defendant IQDI.

118. Defendant IQ Data International, Inc. ("IQDI"), engaged in the collection of a purported debt arising from a residential lease agreement between Plaintiff and her landlord.

119. The lease agreement provided the terms under which rent payments, late fees, and other charges could be assessed. The lease agreement did not expressly authorize the imposition of pre-judgment interest on any unpaid or disputed amounts.

120. Despite the absence of any contractual provision allowing for the collection of pre-judgment interest, Defendant IQDI added a 6% interest charge to the debt it reported to credit reporting agencies and attempted to collect from Plaintiff.

121. Under Minnesota law, specifically Minn. Stat. § 549.09, pre-judgment interest may only be awarded by a court or arbitrator in connection with a judgment or award for pecuniary damages.

122. The statute does not authorize creditors or debt collectors to impose pre-judgment interest unilaterally, absent adjudication or express statutory or contractual authority.

123. By adding interest charges to the alleged debt without a contractual basis or court authorization, Defendant IQDI violated 15 U.S.C. § 1692f(1) of the FDCPA, which prohibits the collection of "any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

124. Defendant IQDI's conduct constitutes the collection or attempted collection of an amount not owed under the terms of the original lease agreement or applicable law, an unfair and unconscionable debt collection practice in violation of 15 U.S.C. § 1692f.

125. As a direct and proximate result of Defendant IQDI's conduct, Plaintiff suffered actual damages, including but not limited to emotional distress, frustration, and harm to her creditworthiness, as well as statutory damages under the FDCPA.

126. The above-described communications and conduct from Defendant IQDI toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, and the FDCPA's enabling regulation, Reg. F, amongst others, as well as violations of Minnesota law.

***Defendant Liberty Mutual Insurance Company***

73.127.  Defendant Liberty Mutual Insurance Company issued a surety bond to Defendant I.Q. Data International, Inc. in accordance with Minnesota Statutes § 332.34, which requires all licensed collection agencies to maintain a bond for the benefit of persons harmed by the agency's unlawful collection practices.

74.128.  The surety bond issued by Defendant Liberty Mutual Insurance Company guarantees payment for damages sustained as a result of Defendant I.Q. Data International, Inc.'s violations of applicable debt collection law in the course of its collection business activities, including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Minnesota Collection Agencies Act, Minn. Stat. § 332.31 et seq.

75.129.  The relevant language of Defendant Liberty's $55,000 Surety Bond No. 016065803 issued to Defendant IQDI reads as follows:

1. The purpose of this obligation, which is required by Minnesota Statutes, Section 332.34, is to secure the compliance by Principal with terms of Minnesota Statutes, Section 332.31 to 332.45, **and any other legal obligations arising out of the Principal's conduct as a collection agency**.

2. **This bond is for the benefit of** the State of Minnesota and **all persons suffering damages by reason of Principal's failure to comply with Minnesota Statutes, Section 332.31 to 332.45, or other legal obligations arising out of Principal's conduct as a collection agency**.

3. If the Principal shall violate Minnesota Statutes, Section 332.31 to 332.45. or other legal obligations arising out of its conduct as a collection agency, the Commissioner of Commerce, as well as **any person damaged as a result of such violation shall have in addition to all other legal remedies, a right of action on this**

**bond in the name of the injured party for loss sustained by the injured part**y.

(Bold emphasis added.)

76.130.    Plaintiff is a person entitled to seek recovery against Defendant Liberty Mutual Insurance Company under the surety bond because she was harmed by the unlawful collection practices of Defendant I.Q. Data International, Inc.

77.131.    As set forth in this Complaint, Defendant I.Q. Data International, Inc. engaged in repeated violations of the Fair Debt Collection Practices Act and the Minnesota Collection Agencies Act by attempting to collect unauthorized charges, failing to cease communications upon request, and making false and misleading representations regarding the alleged debt.

78.132.    Because Defendant Liberty Mutual Insurance Company issued a surety bond guaranteeing Defendant I.Q. Data International, Inc.'s compliance with the law, it is liable for the damages sustained by Plaintiff as a result of Defendant I.Q. Data International, Inc.'s unlawful conduct.

79.133.    In construing the applicability of a collection agency's surety bond under Minn. Stat. § 332.34 to collection agency collection misconduct such as that alleged herein, one federal district court recently held:

> Based on the plain language of the Bond, Plaintiff's claims within the Second Amended Complaint appear properly alleged and supported. The Bond expressly states that it is for the benefit of "all persons suffering damages by reason of Principal's failure to comply with . . . other legal obligations arising out of Principal's conduct as a collection agency." (ECF No. 41-2). Further "[i]f the Principal shall violate . . . other legal obligations arising out of its conduct as a

> collection agency . . . any person damaged as a result of such violation shall have, in addition to all other legal remedies, a right of action on this bond in the name of the injured party for loss sustained by the injured party." *Id.*
>
> Here, Plaintiff alleges that EASOC's collection efforts were violative of the law, and she is therefore entitled to damages resulting therefrom. Thus, the Bond provides a right of action to Plaintiff.
> …
> … [T]he plain language of the Bond which expressly states that the "bond is for the benefit of . . . *all persons suffering damages* by reason of Principal's failure to comply with Minnesota Statutes." (ECF No. 41-2, p. 4)(emphasis added). The bond further states that "[i]f the Principal shall violate … other legal obligations arising out of its conduct as a collection agency, . . . any person damaged as a result of such violation shall have, in addition to all other legal remedies, a right of action on this bond in the name of the injured party for loss sustained by the injured party." *Id.* Thus, the Bond itself creates the cause of action Plaintiff has asserted in the Second Amended Complaint. Accordingly, Plaintiff has indeed stated a claim for relief.

*Bayne v. E. Acct. Sys. of Conn., Inc.*, No. 3:23-cv-3887-JFA, ECF No. 6 at pp.5-7

(D.S.C. Sept. 30, 2024) (unpublished).

80.134.    Despite the filing of Plaintiff's claims against Defendant I.Q. Data International, Inc., Defendant Liberty Mutual Insurance Company has failed to honor its bond obligations and has not paid for the damages caused by Defendant I.Q. Data International, Inc.'s violations alleged in the complaint.

81.135.    Plaintiff seeks recovery from Defendant Liberty Mutual Insurance Company under the surety bond in an amount sufficient to compensate her for the damages caused by Defendant I.Q. Data International, Inc.'s unlawful conduct, as well as any additional relief provided under Minnesota law.

## *Plaintiff has Suffered Concrete Harm*

82.136.    The above-described collection conduct by Defendant IQDI and its collection employees in their efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

83.137.    These collection actions taken by Defendant IQDI, and the collection employees employed by it, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

84.138.    These violations by Defendant IQDI were knowing, willful, negligent and/or intentional, and it did not maintain procedures reasonably adapted to avoid any such violations.

85.139.    Defendant IQDI does not maintain or enforce reasonable procedures to prevent violations of the FDCPA, as evidenced by its continued collection efforts despite Plaintiff's dispute letter and its unlawful communication with Plaintiff's employer.

86.140.    Defendant IQDI's violations were knowing and intentional, disqualifying it from asserting a bona fide error defense under 15 U.S.C. § 1692k(c).

87.141.    Defendant IQDI's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

-25-

88.142.     As a direct and proximate result of Defendant IQDI's unlawful collection practices, Plaintiff has suffered actual and concrete harm, including but not limited to stress, anxiety, reputational damage due to false credit reporting, loss of time addressing Defendant IQDI's illegal communications, and the frustration of her legally protected rights under the FDCPA.

89.143.     Defendant IQDI's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant IQDI's collection efforts because Plaintiff could not adequately respond to the Defendant IQDI's demand for payment of this debt.

90.144.     By demanding these illegal interest fees on this disputed debt both in writing and by telephone, Defendant IQDI misrepresented the amount of the debt and the amount owed by Plaintiff in violation of the FDCPA.

91.145.     As a licensed debt collector in Minnesota, Defendant IQDI knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees that were not provided under the contract or otherwise permitted by law. See Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000).

92.146.     On June 29, 2022, the Consumer Financial Protection Board again weighed in on the illegality of add-on collection fees like those sought by Defendant IQDI from Plaintiff:

> Section 808(1) of the FDCPA prohibits debt collectors, in relevant part, from "collect[ing]... *any* amount (*including* any interest, fee, charge, or expense incidental to the principal obligation)." As the

Supreme Court has explained, the "word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" In addition, under its ordinary meaning, the term "including" typically indicates a partial list. The CFPB interprets the words "any" and "including" as used in section 808(1) consistent with their ordinary meanings. Accordingly, the CFPB clarifies that FDCPA section 808(1) and Regulation F, 12 CFR 1006.22(b), apply to any amount collected by a debt collector in connection with the collection of a debt, including, *but not limited to*, any interest, fee, charge, or expense that is incidental to the principal obligation.

…

The CFPB therefore interprets FDCPA section 808(1) to prohibit a debt collector from collecting any amount unless such amount either is expressly authorized by the agreement creating the debt (and is not prohibited by law) or is expressly permitted by law. That is, the CFPB interprets FDCPA section 808(1) to permit collection of an amount only if: (1) the agreement creating the debt expressly permits the charge and some law does not prohibit it; or (2) some law expressly permits the charge, even if the agreement creating the debt is silent.

https://files.consumerfinance.gov/f/documents/cfpb_convenience-fees_advisory-opinion_2022-06.pdf (footnotes omitted, italics in original) last accessed July 26, 2022.

147.     The incidental interest fees that Defendant IQDI demanded from Plaintiff were not permitted by law and therefore they were illegal add-on fees prohibited under the FDCPA.

148.     The above-described communications and conduct from Defendant IQDI to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

### *Summary*

149.     The above-described collection conduct by Defendant IQDI in its efforts to

collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

96.150.    These collection actions taken by Defendant IQDI, and the collection employees employed by Defendant IQDI, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

97.151.    These violations by Defendant IQDI were knowing, willful, negligent and/or intentional, and Defendant IQDI did not maintain procedures reasonably adapted to avoid any such violations.

98.152.    Defendant IQDI's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

99.153.    Defendant IQDI's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant IQDI's collection efforts because Plaintiff could not adequately respond to the Defendant IQDI's demand for payment of this debt.

### *Respondeat Superior Liability*

100.154.    The acts and omissions herein of the individuals employed to collect debts by Defendant IQDI, and the other debt collectors employed as agents of Defendant

IQDI who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant IQDI.

155. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant IQDI in collecting consumer debts.

156. By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant IQDI.

157. Defendant IQDI is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

158. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 *et seq.*

159. Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

106.160.      The foregoing acts and omissions of Defendant IQDI and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

107.161.      As a result of Defendant IQDI's violations of the FDCPA, Plaintiff is entitled to actual damages and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendants, jointly and severally.

## COUNT II.

## FRAUD

108.162.      Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

109.163.      The Minnesota Court of Appeals has held:

> A prima facie case of fraudulent misrepresentation requires the plaintiff to establish that

>> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the other party suffered pecuniary damage as a result of the reliance.

> *Hoyt Props., Inc.,* 736 N.W.2d at 318 (quotation omitted). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts

that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn.1992).

Beckman v. Wells Fargo Bank, N.A., No. A15-1819, 2016 WL 5640664, at *5–6 (Minn. Ct. App. Oct. 3, 2016).

~~110.~~164.    During the collection communications transmitted by Defendant IQDI, it repeatedly and falsely represented to Plaintiff that Plaintiff was obligated to pay interest and other charges on these obligations in excess of the amounts permitted by Minnesota law, when, in material fact, Plaintiff was not so obligated.

~~111.~~165.    Defendant IQDI knew that the alleged debt it was attempting to collect from Plaintiff had been padded with illegal and impermissible collection fees, and that therefore Plaintiff had no legal obligation to pay it, but it withheld that fact from Plaintiff and instead told Plaintiff that she must pay it.

~~112.~~166.    Defendant IQDI's representations to Plaintiff regarding the alleged debt, including the unauthorized addition of interest and fees, were part of a systematic scheme employed by Defendant IQDI to maximize collections through false and misleading representations.

~~113.~~167.    Defendant IQDI has engaged in similar conduct with other consumers, demonstrating a pattern of fraudulent misrepresentation.

~~114.~~168.    As a licensed Minnesota collection agency, Defendant IQDI knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees that were not provided under the contract or otherwise permitted by law. See Kojetin v. C U Recovery, Inc., 212 F.3d 1318 (8th Cir. 2000).

115.169.    Plaintiff has suffered actual pecuniary damages as a result of Defendant IQDI's deliberate fraudulent misrepresentations of these material facts.

116.170.    Defendant IQDI's misrepresentations that Plaintiff owed this increasing amount, when Plaintiff in fact did not, were material misrepresentations of fact because they influenced Plaintiff's judgment and decisions regarding how to deal with the alleged debt.

117.171.    Defendant IQDI knew that its misrepresentations to Plaintiff were false at the time Defendant IQDI made them.

118.172.    Defendant IQDI's misrepresentations were made intending that Plaintiff would rely on them.

119.173.    Plaintiff reasonably relied upon and acted upon Defendant IQDI's misrepresentations and suffered damages in wasted time seeking legal advice and the costs of litigation in this matter to vindicate Plaintiff's rights under the FDCPA, as well as other damages, including lost work time, upset, frustration, embarrassment, and stress.

120.174.    Plaintiff is entitled to damages for fraud from Defendants, jointly and severally, for the fraudulent acts of Defendant IQDI arising out of its collection conduct with respect to Plaintiff.

### COUNT III.

### PUNITIVE DAMAGES PURSUANT TO MINN. STAT. §549.20

121.175.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

176.    Plaintiff has made a *prima facie* case that Defendant IQDI deliberately disregarded Plaintiff's rights pursuant to Minn. Stat. § 549.20.

177.    Defendants are jointly and severally liable for punitive damages because of Defendant IQDI's deliberate disregard for the rights and safety of others.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants as follows:

- for an award actual damages and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendants, jointly and severally, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendants, jointly and severally, and for Plaintiff;

- for an award of punitive damages from Defendants, jointly and severally, pursuant to Minn.Stat. §549.20, in an amount to be determined at trial;

- for actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant IQDI to Plaintiff regarding this alleged debt from Defendants, jointly and severally;

- for a judgment and decree and decree that Defendant IQDI has engaged in the conduct alleged above, entering Judgment in favor of Plaintiff;

- for all actual compensatory damages suffered from Defendants, jointly and severally;

- for all other recoveries and fees otherwise permitted by these claims and by law from Defendants, jointly and severally;

- for attorney's fees and costs of suit as provided by state and federal law from Defendants, jointly and severally;

- for both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded from Defendants, jointly and severally;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: ~~May 8, 2025~~May 14, 2025

**THE BARRY LAW OFFICE, LTD**

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone:  (612) 379-8800
pbarry@lawpoint.com

**SAVAGE-WESTRICK, PLLP**

Samuel A. Savage, Esq.
Attorney I.D.# 0395638
900 American Blvd. East, Suite. 241
Bloomington, MN 55420
Telephone: (651) 292-9603
Fax: (651) 395-7423
savage@savagewestrick.com

***Attorneys for Plaintiff***

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**.  The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI.** This demand is reasonable and necessary. Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible. For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.** This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.