## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Faith Stekly, | ) | Case No. 0:25-cv-00216-ECT-DLM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **IQ DATA INTERNATIONAL** |
| vs. | ) | **INC.'S MEMORANDUM OF LAW** |
| | ) | **IN OPPOSITION TO PLAINTIFF'S** |
| IQ Data International, Inc. | ) | **MOTION FOR CONTEMPT** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, I.Q. Data International, Inc. ("Defendant" or "IQ Data"), submits this memorandum of law in opposition to Plaintiff's Motion for Contempt and states as follows:

## I.   INTRODUCTION

On July 16, 2025, Plaintiff by and through her counsel, moved for this Court to hold Defendant in contempt for allegedly failing to comply with this Court's July 1, 2025 Order. (ECF No. 59). Plaintiff claims that IQ Data failed to produce mandatory insurance information disclosures and employee address and telephone number contact information. (ECF No. 62).

## II.   LEGAL STANDARD

"The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir.1994). "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). In a civil contempt proceeding,

1

the moving party must prove, by clear and convincing evidence, that the person allegedly in contempt violated the court's order. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to show inability to comply. *Id*. To demonstrate inability to comply, nonmoving parties must establish "(1) that they were unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made, in good faith all reasonable efforts to comply." U*nited States v. Santee Sioux Tribe of Neb*., 254 F.3d 728, 736 (8th Cir.2001) (citation omitted).

"Yet, **substantial compliance** with a court order may be a defense to civil contempt." *Bell v. Young*, No. 4:16-CR-04046-VLD, 2020 WL 7127133, at *11–12 (D.S.D. Dec. 4, 2020) (citations omitted) (emphasis added). "If a violating party has taken all reasonable steps to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt." *Id.* (quoting *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986)).

Sanctions must be just and appropriate as to the discovery dispute. *Buergofol GmbH v. Omega Liner Co., Inc.*, No. 4:22-CV-04112-KES, 2024 WL 2805022, at *10 (D.S.D. May 31, 2024). In order to impose sanctions under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party. *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir.1999).

## III.    STATEMENT OF MATERIAL FACTS

In this case, Plaintiff alleges IQ Data violated several sections of the the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA) and made a fraudulent misrepresentation for sending Plaintiff a letter, calling her employer, and charging interest.

2

(ECF No. 54). For the reasons stated in IQ Data's opposition to Plaintiff's motion for judgment on the pleadings, IQ Data did not violate the FDCPA or make a fraudulent misrepresentation.

On July 1, 2025, a hearing was held. After that hearing, counsel for IQ Data believed that a declarations page of IQ Data's insurance policy would be sufficient to supplement its Initial Disclosures and believed Plaintiff's counsel agreed based on discussing at the hearing.[1] Counsel for IQ Data also indicated that he would be representing IQ Data employees and would facilitate any requests to depose the IQ Data employees involved in communicating with Plaintiff. It was ordered that "initial disclosures must be supplemented no later than July 7, 2025 to reflect insurance information consistent with Federal Rule of Civil Procedure 26(a)(1)(A)(iv), as well as last known contact information (address and telephone numbers) for employees and former employees involved in the disputed collection activity." (ECF. No. 59). The Court also advised counsel that IQ Data must "make a good faith effort to engage in a fulsome meet-and-confer process" with respect to the other discovery disputes. *Id.*

On July 1, 2025, following the status conference with the Court, counsel for IQ Data sent Plaintiff's counsel the following email:

> Pursuant to Rule 26(a)(1) and 26(e), please be advised that Ayla Fox and Nick Ferguson continue to work with IQ Data. We have confirmed our representation of them, and would be happy to facilitate their depositions upon request. Rachel Holloway is no longer with IQ Data, and I am working on contacting her to determine whether we will be representing her as well.

---

[1] Counsel for IQ Data is confirming whether the parties were on the record and will request a copy of the transcript if so.

I will provide her last known address as soon as I can. Please let me know if you have any questions, and best wishes for the holiday.

Further, please find attached the declaration page for the at-issue insurance policy (ECF No. 62-1).

The declarations page included: the name of the insured (IQ Data), the address of the insured, the policy period, the limits of liability, and the deductible. Plaintiff filed her Motion for Contempt on July 16, 2025. (ECF No. 62). Fact Discovery is due by December 1, 2025. (ECF No. 38)

## IV.   ARGUMENT

### a.  IQ DATA PRODUCED SUFFICIENT INSURANCE INFORMATION CONSISTENT WITH FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A)(iv).

On July 1, 2025, IQ Data complied with this Court's Order to produce "insurance information consistent with Federal Rule of Civil Procedure 26(a)(1)(A)(iv)." (ECF No. 59). IQ Data sent Plaintiff's counsel its insurance declaration page which demonstrates there is an insurance agreement with more than enough coverage for Plaintiff's claim. Federal Rule of Civil Procedure 26(a)(1)(A)(i) does not require a defendant to produce the full insurance policy but mandates "disclosure of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." The rule's language specifies "any insurance agreement," which includes the existence and contents of the agreement but does not explicitly require production of the entire policy unless it is relevant to the claims or defenses in the litigation. (ECF. No. 63-1).

Courts will not necessarily order parties to disclose additional insurance information when it is not relevant to the case. *See Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 161 (N.D. Iowa 1994) (finding there is no requirement for defendant to produce more than it has already produced regarding its insurance and denying the plaintiff's motion to compel).

While Rule 26(a)(1)(A)(i) mandates some disclosure of insurance agreements, courts have also imposed limitations to protect sensitive information. For example, in *Burke v. Ability Ins. Co.*, the Court required redaction of personal identifiers associated with insurance documents to comply with privacy protections under Rule 5.2. *Burke v. Ability Ins. Co.*, 291 F.R.D. 343 (2013). Additionally, in *Colorado Mill & Elevator Co. v. American Cyanamid Co.*, the court denied discovery of irrelevant insurance-related information, such as payments made by insurers to plaintiffs, as it did not pertain to the claims or defenses in the case. *Colorado Mill & Elevator Co. v. American Cyanamid Co.*, 10 F.R.D. 611 (1950).

In this case, the Court ordered IQ Data to supplement its initial disclosures "to reflect insurance information consistent with Federal Rule of Civil Procedure 26(a)(1)(A)(iv)." IQ Data's supplemental disclosure on July 1, 2025 includes insurance information consistent with Federal Rule of Civil Procedure 26(a)(1)(A)(iv). Additionally, the production of the Declarations page was discussed at the hearing and therefore, it was IQ Data's understanding that this was sufficient. To the extent the Court disagrees, IQ Data asks the Court to provide two weeks from the date of the Court's Order on this issue to provide more information.

### b. IQ DATA REQUESTS MORE TIME TO PROVIDE PLAINTIFF WITH THE NAMES AND ADDRESSES OF BOTH THE CURRENT AND FORMER IQ DATA EMPLOYEES.

Per the Court's July 1, 2025, counsel for IQ Data has requested from IQ Data the last known addresses and phone numbers of IQ Data's two current employees and one former employee. Counsel for IQ Data has not yet received the last known addresses and phone numbers. Counsel for IQ Data requests an additional 7 days to produce this information. Plaintiff has not been prejudiced in any way by not currently having addresses and phone numbers of employees who he cannot contact directly since they are being represented by counsel in this case. Plaintiff's counsel has also not requested deposition dates. Again, IQ Data will coordinate any necessary depositions with Plaintiff's counsel to ensure discovery is complete by the discovery cutoff date (December 1, 2025).

### c. PLAINTIFF'S REQUESTS FOR RELIEF ARE DISPROPORTIONATE AND EXCESSIVE.

In Plaintiff's Motion for Contempt, Plaintiff requests, an order to show cause, a finding of contempt, reasonable attorney' fees and costs, and coercive monetary sanctions for each day it continues to withhold the required disclosures after entry of the Court's order. (ECF No. 62). The requested relief sought by Plaintiff is disproportionate and excessive as Plaintiff has not shown any prejudice for the alleged violation.

A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order. *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir.1998) (emphasis added). Civil contempt "should not be resorted to where there is [a] **fair ground of doubt** as to the wrongfulness of the defendant's conduct." *California Artificial Stone Paving Co. v.*

6

*Molitor*, 113 U.S. 609, 618 (1885) (emphasis added). This standard reflects the fact that civil contempt is a "severe remedy," *ibid.*, and that principles of "basic fairness requir[e] that those enjoined receive explicit notice" of "what conduct is outlawed" before being held in civil contempt. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see* 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2960, pp. 430–431 (2013) (suggesting that civil contempt may be improper if a party's attempt at compliance was "reasonable").

In this case, IQ Data emailed Plaintiff with additional information to comply with the Court's July 1, 2025 order. IQ Data's conduct does not amount to the high burden required to hold a party in contempt. IQ Data has litigated hundreds of cases in various federal districts over the last ten years. Plaintiff cites to one case for the notion that IQ Data has a "pattern and practice" of defying Court orders. To the contrary. The sheer number of cases where this issue has <u>never</u> arose demonstrates a patten and practice of engaging in discovery and complying with the Court's orders.

Lastly, IQ Data opposes Plaintiff's request for attorney's fees given the good faith dispute over this issue and the lack of prejudice it has caused Plaintiff. Discovery remains open and the parties have until December 1, 2025 to complete discovery. Further, Plaintiff's counsel has not provided enough information to demonstrate he is entitled to attorneys fees and that incurring additional fees was reasonable and necessary under the circumstances. The reasonableness of a request for attorney's fees incurred in civil contempt proceedings "according to the familiar 'lodestar method'—that is, the number of hours reasonably expended multiplied by a reasonable hourly rate." *Walman Optical Co.*

7

*v. Quest Optical, Inc.*, No. 11-CV-0096 (PJS/JJG), 2012 WL 3248150, at *11 (D. Minn. Aug. 9, 2012). Parties must submit their billing records as evidence of the actual loss they seek to recover. *See*, e.g., *Walman Optical Co.*, 2012 WL 3248150, at *10–15 (reviewing billing records and reducing requested fees because rates requested and hours expended were excessive); *Bricklayers & Allied Craftworkers Serv. Corp. v. Archithority United L.L.C.*, No. 19-CV-2588 (MJD/ECW), 2020 WL 7249860, at *17 (D. Minn. Nov. 3, 2020), ("Bricklayers submitted its counsel's invoices with time entries for that period."). Mr. Barry's declaration does not set forth any hours spent on the motion. Further, there is no identification of sufficient efforts to resolve the dispute without motion practice.

**V.    CONCLUSION**

Based on the above, Defendant IQ Data respectfully asks this Court to deny Plaintiff's Motion for Contempt.

DATED: July 23, 2025

Respectfully Submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: */s/Suzanne L. Jones*
    Suzanne L. Jones, MN Bar No. 389345
    Leah J. Christenson, MN Bar No. 0504664
    80 S. 8TH Street, Suite 3850
    Minneapolis, MN 55402
    Tel. (612) 351-5969
    sljones@grsm.com
    lchristenson@grsm.com
    *Attorneys for Defendant*