UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Faith Stekly, | File No. 25-cv-216 (ECT/DLM) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| I.Q. Data International, Inc. and Liberty Mutual Insurance Company, | |
| Defendants. | |

Peter F. Barry, The Barry Law Office, Ltd, St. Paul, MN, and Samuel A. Savage, Savage Westrick P.L.L.P., Bloomington, MN, for Plaintiff Faith Stekly.

Paul Gamboa and Krista Easom, Gordon Rees Scully Mansukhani, LLP, Chicago, IL, and Leah Christenson and Suzanne L. Jones, Gordon Rees Scully Mansukhani, LLP, Minneapolis, MN, for Defendant I.Q. Data International, Inc.

David H. Gregerson, Gregerson, Rosow, Johnson & Nilan, Ltd., Minneapolis, MN, for Defendant Liberty Mutual Insurance Company.

Plaintiff Faith Stekly claims Defendant I.Q. Data International, Inc. violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and committed state-law fraud when it tried to collect a debt from her. Among several FDCPA theories, Ms. Stekly claims: (1) that I.Q. violated § 1692c(c) by mailing a debt-collection letter to her after she demanded that I.Q. stop communicating with her, and (2) that I.Q. violated § 1692f(1) by attempting to collect interest on Ms. Stekly's debt though interest was not available under a contract or statute. Ms. Stekly seeks judgment on the pleadings with respect to I.Q.'s liability on these two claims pursuant to Federal Rule of Civil Procedure

12(c). The motion will be denied. I.Q. plausibly denies that Ms. Stekly possesses Article III standing to pursue these claims and plausibly denies factual allegations on which Ms. Stekly depends to show the claims' essential elements.

Ms. Stekly alleges many facts supporting numerous FDCPA theories, but the background allegations supporting the two at-issue claims are few and straightforward. Ms. Stekly incurred a personal debt when she rented an apartment. First Am. Compl. [ECF No. 9] ¶ 25.[1] I.Q. acquired the debt and attempted to collect it. *Id.* ¶¶ 27, 29. As part of its collection efforts, I.Q. called Ms. Stekly's employer regarding the debt. *Id.* ¶¶ 30, 34, 47. This prompted Ms. Stekly to send I.Q. a letter dated March 2, 2024, in which Ms. Stekly wrote that she "vehemently dispute[d] the balance and existence of th[e] debt amount in its entirety" and demanded that I.Q. "cease all collection activities immediately." *Id.* ¶ 39. According to Ms. Stekly, I.Q. received her March 2 letter nine days later, on March 11. *Id.* ¶ 40. I.Q. responded with a letter to Ms. Stekly dated March 18, 2024. ECF No. 21-2; *see* First Am. Compl. ¶ 40. The letter read, in relevant part:

> In reference to your recent request, please find enclosed validation of debt you requested with LEXI APTS (MN).
>
> Please remit the balance in full of $1061.38 or contact our office to discuss this debt.

\*   \*   \*

---

[1] Ms. Stekly filed her Rule 12(c) motion based on the then-operative First Amended Complaint, and that version remained operative when the motion was heard. Shortly after the hearing—with no opposition from I.Q. and with the Court's permission—Ms. Stekly filed a Second Amended Complaint. ECF No. 54. Here, the facts are drawn from the First Amended Complaint because the motion was based on it and because the Second Amended Complaint adds no allegations that might change the analysis.

> This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose. Your outstanding principal balance will accrue interest at a rate of 006.00 percent per annum.

ECF No. 21-2 at 2; *see also* First. Am. Compl. ¶ 40.

The theories underlying the two at-issue FDCPA claims also are straightforward. (1) Subject to exceptions that everyone seems to agree don't apply here, § 1692c(c) says that "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." Ms. Stekly claims she notified I.Q. in her March 2 letter that she wished it to "cease and assist [sic] any further contact" with her regarding the debt. First Am. Compl. ¶ 39. She claims that, after receiving her March 2 letter, I.Q. sent its March 18 letter and that I.Q.'s letter concerned the debt because it reflected an attempt to collect it. *Id.* ¶ 40. (2) Section 1692f(1) forbids a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," and it lists as an example of an "unfair or unconscionable means" the collection of interest "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Ms. Stekly claims that I.Q. violated § 1692f(1) because, in its March 18 letter, I.Q. added 6% annual interest to the debt without any contractual or other legal basis. First Am. Compl. ¶ 41, 56. Ms. Stekly does not identify harms resulting specifically from I.Q.'s March 18 letter. She alleges that I.Q.'s conduct generally—including claim-prompting actions not at issue in this motion—resulted in reputational injury, "workplace embarrassment," "emotional distress, frustration, . . . harm to her creditworthiness,"

3

"stress, anxiety, . . . loss of time addressing [I.Q.'s] illegal communications," and the frustration of her "ability to intelligently respond to [I.Q.'s] collection efforts." *Id.* ¶¶ 35–36, 71, 87–89, 99.

"Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 971 (8th Cir. 2018) (quotation omitted). A motion for judgment on the pleadings is assessed under the Rule 12(b)(6) standard. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Under that standard, a court must accept as true all well-pleaded factual allegations in the non-moving party's pleading and draw all reasonable inferences in the non-moving party's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted); *see Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) ("When a plaintiff is the movant, courts must accept all factual allegations in the answer and draw all reasonable inferences in favor of the defendants, who are the non-movants in that scenario."). "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *CTM Holdings, LLC v. U.S. Dep't of Agric.*, No. 24-CV-2016-CJW-MAR, 2024 WL 5699963, at *1 (N.D. Iowa Dec. 6, 2024) (quoting *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)); *see* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1368 (3d ed. Apr. 2025 Update) ("Thus, the plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.").

"[T]he plaintiff's standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury will likely be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To establish an injury in fact, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. The Supreme Court has explained in some detail what makes an injury "concrete" for Article III's purposes. *See, e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–30 (2021). A "concrete" injury is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citation modified). Complaints that allege "economic or physical harms" are almost always no-doubters. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 642 (2007) (Souter, J., dissenting). This is true even if the alleged harm is "only a few pennies." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014). "Various intangible harms can also be concrete," though they also may present more difficult and closer calls. *TransUnion*, 594 U.S. at 425. As the Court explained in *Spokeo* in the context of federal statutory claims:

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is

> instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."

578 U.S. at 340–41 (citations omitted). Examples of "harms traditionally recognized as providing a basis for lawsuits in American courts . . . include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. In the context of an alleged federal statutory violation, the task is to examine the plaintiff's injury allegations and determine whether they have a "close relationship" to a harm traditionally recognized as the basis for a case under the common law. *Spokeo*, 578 U.S. at 341; *see also Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930–31 (8th Cir. 2016). As then-Judge Barrett explained, courts are to look for a "'close relationship' in kind, not degree." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020); *see also Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) ("[I]n the standing analysis we consider the nature or type of the harm, not its extent.").

For two independent reasons, Ms. Stekly's standing to assert her claims under § 1692c(c) and § 1692f(1) cannot be resolved for (or against) her in this procedural context. (1) As presented, answering the standing question at this stage would require inappropriate guesswork. Whether Ms. Stekly possesses standing to bring either of the at-issue FDCPA

6

claims implicates two distinct fact-specific questions (one for each claim), and each of those questions is distinct from whether Ms. Stekly has standing to bring any of her several other FDCPA claims. *See TransUnion*, 594 U.S. at 431 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ."); *Denmon v. Kan. Counselors, Inc.*, --- F.4th ---, 2025 WL 2329189, at *2 (8th Cir. Aug. 13, 2025) (describing Article III injury analysis as "fact-intensive"). Here, though the First Amended Complaint includes many allegations describing injuries Ms. Stekly claims to have suffered due to I.Q.'s conduct, the pleading does not tether specific injuries to either the § 1692c(c) claim or the § 1692f(1) claim. In other words, determining whether Ms. Stekly has standing to bring these two claims would require guessing which injuries she might associate with each claim.

(2) I.Q. plausibly denied that Ms. Stekly suffered an Article III-worthy injury. In the Rule 12(c) context, granting Ms. Stekly's motion would require a once-and-for-all conclusion that she suffered Article III–worthy injuries in connection with each of the two at-issue claims. *See Am. All. for Equal Rts. v. Ivey*, No. 2:24-cv-104-RAH, 2024 WL 3463347, at *4 (M.D. Ala. July 17, 2024) (denying motion for judgment on the pleadings due to disputes of material fact critical to plaintiff's standing). Again, in this context, a defendant's denials matter. *See CTM Holdings, LLC*, 2024 WL 5699963, at *2 ("[D]efendants' denials, if taken as true, would lead to the conclusion that plaintiff has suffered, or will imminently suffer, no injury. Of course, if plaintiff does not have any injury, it would not have standing. If plaintiff does not have standing, then the Court cannot grant judgment on the pleadings in favor of plaintiff." (footnote omitted)). In its Answer

7

to the First Amended Complaint, I.Q. denied that Ms. Stekly has Article III standing. *See* Am. Answer [ECF No. 13] ¶¶ 3, 35–36, 71, 87–89, 99, and at 14 ("Defendant asserts that Plaintiff has not incurred an injury in fact, and Plaintiff does not therefore have standing under Article III of the United States Constitution to bring the instant claims."). Like Ms. Stekly's injury allegations, I.Q.'s denials are not claim-specific. Regardless, Ms. Stekly identifies no reason to think that I.Q.'s denials are inappropriate, implausible, or that they should be rejected for some other reason. The Eighth Circuit's recent *Denmon* decision supports them. There, the court held that receipt of a collection letter, "[e]ven if unwanted," "may not be an intrusion that would be highly offensive to a reasonable person." *Denmon*, 2025 WL 2329189, at *4 (citation modified). In reaching this conclusion, the court endorsed (and arguably adopted) the standing approach regarding debt-collection letters adopted by the Seventh Circuit in *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634 (7th Cir. 2023). There, the court decided there "is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail," meaning unwanted debt-collection letters do not confer standing. *Id.* at 640.

If standing weren't in question, the merits of the two at-issue claims would be. Ms. Stekly's § 1692c(c) claim is premised on allegations, among others, that Ms. Stekly was a consumer, and that I.Q. mailed its collection letter to Ms. Stekly after it received Ms. Stekly's March 2 letter. *See* First Am. Compl. ¶¶ 12, 39–40. In its Answer, I.Q. denied that Ms. Stekly was a "consumer," Am. Answer ¶ 12, denied Ms. Stekly's allegations regarding the date she sent her letter to I.Q. and the date it received Ms. Stekly's letter, *id.* ¶ 39, and denied sending its letter to Ms. Stekly after it received hers, *id.* ¶ 40. Ms. Stekly's

8

§ 1692f(1) claim is premised on allegations, among others, that Ms. Stekly was a consumer and that, in its collection letter, I.Q. "falsely threatened to add interest at the rate of 6% per annum to" Ms. Stekly's debt "despite the fact that no such interest was due and owing on this disputed debt." First Am. Compl. ¶ 41; *see id.* ¶¶ 57–70. I.Q. denied these allegations. Am. Answer ¶¶ 12, 41, 57–70. Whether evidence Ms. Stekly possesses casts doubt on the truth of these denials, or whether they turn out to have been unsupported, is beside the point. In the context of a Rule 12(c) motion, they must be accepted as true.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Plaintiff Faith Stekly's motion for partial judgment on the pleadings [ECF No. 18] with respect to Defendant I.Q. Date International, Inc's liability on her claims under 15 U.S.C. §§ 1692c(c) and 1692f(1) is **DENIED**.

Dated: August 15, 2025

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court