**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Faith Stekly, | Case No.: 0:25-cv-00216-ECT-DLM |
| Plaintiff, | |
| v. | **IQ DATA INTERNATIONAL, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** |
| IQ Data International, Inc., and Liberty Mutual Insurance Company, | |
| Defendant. | |

Defendant, I.Q. Data International, Inc. ("Defendant" or "IQ Data"), submits this memorandum in opposition to Plaintiff's Motion for Protective Order and states as follows:

## I.   INTRODUCTION

In her Motion for Protective Order, Plaintiff is seeking to quash IQ Data's subpoena of Plaintiff's personnel file from her previous employer, International Paper. Plaintiff claims that the records sought by IQ Data are "irrelevant to the claims asserted and have no probative value towards the claims or defenses in this matter." *See* Docket No. 89, Plaintiff's Memorandum of Law, p. 1. Plaintiff's personnel file is directly probative to her claims of reputational harm and workplace embarrassment allegations. *See* Docket No. 54, Plaintiff's Second Amended Complaint, at ¶¶ 35, 58. These records are also relevant to her claimed damages of lost work time, stress, upset, frustration, and embarrassment. *Id.* at ¶ 173. For these reasons, and the below, Plaintiff's Motion for Protective Order should be denied.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 45, a district court may quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden. A party has standing to quash a third-party subpoena in the limited instances of when the information sought is irrelevant, or the objecting party has a particular privacy interest that outweighs the importance of the potential probative value of the sought evidence, and that privacy interest would be violated upon disclosure; a party does not have standing to assert any rights of a non-party. *See Christopher v. Hanson*, No. 09-3703 (JNE/JJK), (D. Minn. July 6, 2010).

The Eighth Circuit generally looks to the Court of Appeals for the Federal Circuit to determine whether a third-party subpoena creates an undue burden because of the "dearth of Eighth Circuit case law" on motions to quash. *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1209 (Fed.Cir.1987). A party seeking to quash a subpoena bears "a particularly heavy" burden. *Id.* at 1210 (quoting *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965)).  In determining whether to grant a motion to quash, courts must weigh the relevance of the requested materials against the burden to the party subject to the subpoena. *See, e.g., Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 360–62 (8th Cir.2003); *Plant Genetic Sys. N.V. v. Northrup King Co.*, 6 F.Supp.2d 859, 861 (E.D.Mo.1998) (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986)); *Truswal Sys.*, 813 F.2d at 1210. "Minnesota courts have consistently construed the discovery rules in favor of broad discovery." *Lang v. Flagship Bank Minn.*, 2020 Minn. Dist. LEXIS 1123. "Unless otherwise limited by court order ... [p]arties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. Rule 26(b)(1). Under Rule 26, the party seeking a protective order must show good cause for its issuance. *Id.*

### III.    STATEMENT OF MATERIAL FACTS

On May 22, 2025, Plaintiff filed her Second Amended Complaint alleging in part that IQ Data called her employer, International Paper at the time, in violation of the FDCPA. Plaintiff claims that "IQ Data's call to Plaintiff's workplace directly resulted in reputational harm and workplace embarrassment." *See* Docket No. 54, at ¶ 35. She further claims that IQ Data put her, "at risk of embarrassment, reputational harm, and potential termination." *Id.* at ¶ 66. Plaintiff alleges that her damages include "lost work time, upset, frustration, embarrassment, and stress." *Id.* at ¶ 173

On May 24, 2025, Plaintiff responded to IQ Data's Interrogatories. *See* Plaintiff's Responses to IQ Data's Interrogatories, attached herein as **Exhibit A**. In her Responses to IQ Data's Interrogatories, Plaintiff states that she is unsure of when she began working for International Paper and could not provide the full name of her supervisor. *Id.* at 4. In response to IQ Data's Interrogatory regarding damages, Plaintiff answered that "[t]hose damages include reputational harm and workplace embarrassment, including other co-workers making comments about how I am broke." *Id.* at 6. In the same response, Plaintiff stated that these alleged calls "caused stress at [her] workplace, and [she] was worried [she] would receive some sort of reprimand." *Id.*

On May 23, 2025, Plaintiff responded to IQ Data's Requests for Production. *See* Plaintiff's Responses to IQ Data's Requests for Production, attached herein as **Exhibit B**.

IQ Data asked Plaintiff to produce several documents related to her employment with International Paper, including all text messages between Plaintiff and her colleagues from International Paper regarding her allegations, proof that IQ Data called International Paper, and her personnel file with International Paper. *See* Ex. B, pp. 13-14. In response, Plaintiff either did not produce any responsive document production or stated she did not possess any "direct documentary evidence" responsive to IQ Data's requests. *Id.*

On September 11, 2025, IQ Data served a subpoena to opposing counsel, which requests the following documents from International Paper: "Any and all documents, including but not limited to the entire personnel file, for Faith Stekly, including all records related to any warnings, disciplinary notices, termination, and performance reviews." *See* Docket # 90-1.

## IV.    ARGUMENT

Plaintiff's Motion for Protective Order should be denied, as the personnel file sought by IQ Data is directly probative towards Plaintiff's alleged reputational harm and workplace embarrassment claims. Plaintiff's attempts to quash IQ Data's subpoena to International Paper do not meet the standards of FRCP 45. Therefore, this Court should deny Plaintiff's Motion for Protective Order.

### A. Plaintiff's personnel file is directly probative and relevant to Plaintiff's claims of workplace embarrassment and reputational harm.

Plaintiff claims that her employment records are irrelevant to any claims or defenses. *See* Docket No. 89, p. 3. "Relevance" within the meaning of Rule 26(b)(1) is a considerably broader concept than "relevance" for purposes of trial. *See Schoffstall v.*

*Henderson*, 223 F.3d 818, 823 (8th Cir.2000) (explaining that under Rule 26(b)(1) "[r]elevant information [for purposes of discovery] need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"). However, the meaning of "relevancy" with respect to a third-party subpoena has the same broad scope as otherwise permitted under the discovery rules. *See, e.g.,* 8 Charles Wright & Alan Miller, Federal Practice and Procedure § 2452 (3d ed.2008).

In this matter, Plaintiff is claiming that "IQ Data's call to Plaintiff's workplace **directly resulted in reputational harm and workplace embarrassment.**" *See* Docket No. 54, at ¶ 35 (emphasis added). She further claims that IQ Data put her, "at risk of embarrassment, reputational harm, and potential termination." *Id.* at ¶ 66. Plaintiff alleges that her damages include **"lost work time, upset, frustration, embarrassment, and stress."** *Id.* at ¶ 173 (emphasis added). Plaintiff has made her own personnel file relevant by making these assertions. If IQ Data's actions put Plaintiff at risk of termination, embarrassed her, and caused her lost work time and/or reputational harm in her workplace, IQ Data has a right to subpoena any documents in her file to support or refute those damages under FRCP 45.

Additionally, in her Responses to IQ Data's Interrogatories, Plaintiff states that she is unsure of when she began working for International Paper and could not provide the full name of her supervisor. *See* Ex. A, p. 4. The name of Plaintiff's supervisor, who allegedly received calls from IQ Data regarding Plaintiff's outstanding debt, is a discoverable fact that IQ Data is entitled to. *See* Fed.R.Civ.P. Rule 26(b)(1). Without the ability to subpoena International Paper, IQ Data will be deprived of information directly relevant to their

defensibility of this case and will be unable to depose the parties necessary to confirm or refute Plaintiff's alleged damages.

In her motion, Plaintiff relies on *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 238 (D. Minn. 2013). In *Shukh,* the court quashed a subpoena for an expert's employment and financial records because they were not shown to have any relevance to the expert's inventorship testimony and raised undue intrusion concerns. *Id.* at 238. That scenario has is not at issue here.

Additionally, under FRCP 26(b)(1), Plaintiff must have shown "good cause" in her motion in order to quash IQ Data's subpoena. Plaintiff cannot demonstrate "good cause" because the subpoena seeks relevant information. There is no indication that the information sought by IQ Data is not reasonably calculated to lead to the discovery of admissible evidence and therefore relevant. *See* Fed.R.Civ.P. 26(b)(1). It is exactly the reason for the subpoena in the first place: Plaintiff's personnel file is directly probative to her damages while working as an employee of International Paper, as well as the name(s) of her supervisor(s). IQ Data's subpoena was issued solely to lead to the discovery of admissible evidence under FRCP 26. Therefore, Plaintiff's motion must be denied.

**B. Plaintiff's claims that IQ Data's subpoena creates an "undue burden" are irrelevant and Plaintiff lacks standing to raise this argument.**

Plaintiff makes a blanket claim in her memorandum of law that IQ Data's subpoena to her former employer would create an "undue burden." *See* Docket No. 89, p. 5. Under Federal Rule of Civil Procedure 45, parties to whom subpoenas are **not** directed **lack standing to quash or modify such subpoenas** on the basis that the subpoenas impose an

undue burden. *See*, *e.g., W. Coast Prods., Inc. v. Does 1–5829*, 275 F.R.D. 9, 16 (D.D.C.2011) (explaining that the party receiving the subpoena is the proper party to raise a challenge based on undue burden) (emphasis added). In this case, the subpoena is directed at International Paper, not the Plaintiff. The law explicitly provides that because Plaintiff was not the subject of the challenged subpoena, Plaintiff lacks standing to bring a motion to quash. *See Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013).

### C. IQ Data's interest in discovering the relevant information outweighs Plaintiff's privacy concerns.

If a party shows a legitimate need for the documents, the interest of litigants in discovering relevant information pursuant to Rule 26 outweighs the general privacy interest that an employee has in the contents of his or her employment file. *See Kampfe v. Petsmart, Inc.,* 304 F.R.D. 554 (N.D. Iowa 2015). In fact, Eighth Circuit district courts have affirmed that "[a] Plaintiff's full employment records are **likely to lead to the discovery of admissible evidence regarding Plaintiff's credibility and Defendant's defenses**." *Wolfe v. Gallagher Bassett Servs. Inc.*, No. 4:11CV01610 ERW, 2012 WL 1357751, at *2 (E.D. Mo. Apr. 19, 2012) (emphasis added); *see also Hughes v. Dex XP*, No. 4:18-CV-00967JAR, 2019 WL 3037198, at *1 (E.D. Mo. July 11, 2019) ("[P]ayroll and benefit information may be relevant to damages"). Similarly, district courts in the Eighth Circuit have established that a plaintiff's former employer was entitled to discovery of Plaintiff's performance evaluations, disciplinary reports, payroll records, and benefits records from a different former employer. *See Kampfe,* 304 F.R.D. at 559. The *Kampfe* Court held that the plaintiff employee **was not entitled to a protective order with respect to her personnel records**

from her other former employer. *Id.* (emphasis added). These cases are directly applicable to the case at hand.

In this case, IQ Data's interest in discovering the relevant information outweighs Plaintiff's privacy concerns because the need for the information is based on Plaintiff's own allegations. If Plaintiff is going to claim reputational harm caused by IQ Data, IQ Data is entitled to documents showing what her reputation was at International Paper. Plaintiff also claims she was embarrassed by her supervisor receiving the call. Any potential misconduct, disciplinary records, and complaints about Plaintiff in the workplace are all relevant to understanding what her reputation was and are necessary to assess her claim that this phone call embarrassed her.

## V.    CONCLUSION

Based on the foregoing, IQ Data respectfully requests that the Court deny Plaintiff's motion for protective order.

GORDON REES SCULLY MANSUKHANI, LLP

Dated:  September 17, 2025          */s/ Paul Gamboa*
Paul Gamboa (admitted PHV) (#6282923)
Suzanne L. Jones (#389345)
80 South 8th Street, Suite 3850
Minneapolis, MN  55402
P:  612-382-0625
sljones@grsm.com
***Counsel for Defendant IQ Data Int'l., Inc.***