UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Faith Stekly,

               Plaintiff,

v.

I.Q. Data International, Inc., and
Liberty Mutual Insurance Company,

               Defendants.

No. 25-cv-216 (ECT/DLM)

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS AND TO SEAL IMPROPERLY FILED DOCUMENTS**

This matter is before the Court on Plaintiff Faith Stekly's Motion for Sanctions and to Seal Improperly Filed Documents. (Docs. 95 (Motion), 97 (Memorandum in Support).) Defendant I.Q. Data International, Inc. ("I.Q. Data"), the subject of Plaintiff's motion, has filed its Opposition (Doc. 102), and the matter is fully submitted.

While sanctions are within this Court's discretion, they will not be imposed here. As for Plaintiff's motion to seal, the matters that Ms. Stekly seeks to keep confidential have already been refiled in a manner that grants such protection. As such, the Court respectfully denies Plaintiff's motion in its entirety.

## BACKGROUND

This is a fair debt collection case. (Doc. 54 (Second Amended Complaint).) Plaintiff Faith Stekly alleges that I.Q. Data—a collection agency—made illegal collection calls to third parties, wrongly reported disputed debt, and wrongly charged interest on a disputed debt in violation of the Fair Debt Collection Practices Act and Minnesota Collection Agencies Act. (*Id.*)

-1-

During pretrial litigation, Plaintiff filed a Motion for a Protective Order,[1] seeking to prevent enforcement of a subpoena issued by I.Q. Data for Ms. Stekly's employment records. (Docs. 86 (Motion), 89 (Memorandum).) Together with its response (Doc. 93), I.Q. Data filed two exhibits that are the subject of this motion: Plaintiff's responses to I.Q. Data's interrogatories (hereinafter "Interrogatory Responses") (Doc. 94-1), and documents Plaintiff produced in response to I.Q. Data's requests for production of documents ("RPD Responses") (Doc. 94-2). According to the timestamp on the docket, these two exhibits were filed at 5:07 p.m. on September 17, 2025. (Doc. 94.)

The Interrogatory Responses included Ms. Stekly's full date of birth and other personally identifiable information. The RPD Responses included roughly 200 pages of documents that Plaintiff had marked "Confidential Subject to Protective Order," consistent with the Protective Order previously issued in this case. (Doc. 37.) Among the documents included in the RPD Responses were Plaintiff's full credit reports, financial information, and other sensitive data. Nonetheless, these two exhibits were initially filed publicly and without restriction.

Roughly two hours after the Interrogatory Responses and RPD Responses were filed, Plaintiff's counsel alerted counsel for I.Q. Data that those documents had been filed without protection or redaction. (Docs. 98, 103.) Counsel for I.Q. Data informed Plaintiff's counsel that the unredacted filing of these documents was inadvertent, and that the matter would be remedied as soon as possible. (*Id.*) The same evening, counsel for I.Q. Data sent

---

[1] This motion was unrelated to the Protective Order already issued in this case (Doc. 37), which was based on the parties' Stipulation for Protective Order (Doc. 34).

an email alerting the Court of the erroneous filing. (Doc. 103.) When the ECF help desk opened the next morning, counsel for I.Q. Data was able to restrict public access to the Interrogatory Responses and RPD Responses.[2] (*Id.*; *see also* Doc. 102 at 1.)

In the midst of these events, Plaintiff filed the instant motion for sanctions and to seal documents. According to the docket's timestamp, Plaintiff's motion was filed at 8:06 p.m. on September 17, 2025. (Doc. 95.) That was about three hours after I.Q. Data filed the offending documents, (Doc. 94) and roughly an hour after counsel for the parties discussed the issue (Doc. 98). According to Plaintiff's Meet and Confer statement, counsel's expressed intent was to "immediately" bring the instant motion. (Doc. 98). Plaintiff did so. (Doc. 95). That meant that all of these filings—I.Q. Data's public filing of the Interrogatory Responses and RPD Responses, as well as Plaintiff's motion for sanctions—were made during the evening hours of September 17, 2025, while the Clerk's Office was closed.

In her motion, Ms. Stekly asserts that by publicly filing the Interrogatory Responses and RPD Responses, counsel for I.Q. Data violated: this Court's Protective Order as enforceable via Federal Rule of Civil Procedure 37(b)(2) by failing to file material marked "Confidential" under seal; Federal Rule of Civil Procedure 5.2's restrictions on the public filing of personally identifiable information; and District of Minnesota Local Rule 5.6's protocols for sealed filings. (*See generally* Doc. 97.) Ms. Stekly asks the Court to impose

---

[2] The Interrogatory Responses have since been refiled in redacted form (Doc. 100-1), and the RPD Responses have been refiled without including any of the documents marked "Confidential Subject to Protective Order" (Doc. 100-2).

sanctions as follows: (1) seal and strike the improperly-filed exhibits from the public docket; (2) require I.Q. Data to pay Plaintiff's attorney fees and expenses incurred to address this matter; (3) bar I.Q. Data from using the improperly-filed documents in litigation about the propriety of its employment-records subpoena; (4) admonishment or a contempt sanction; and (5) other relief as just and appropriate. (Docs. 95 at 2; 97 at 4.)

I.Q. Data opposes Plaintiff's motion. (Doc. 102.) It acknowledges that its public filing of the Interrogatory Responses and RPD Responses was inappropriate, but contends that it was an inadvertent blunder that was quickly corrected. The absence of bad faith, vexatious, wanton, or oppressive conduct counsels against sanctions under the Court's inherent authority, says I.Q. Data. (*Id.* at 3.) As for Rule 37, I.Q. Data contends that that an award of attorney's fees and expenses would be unjust here, as the public filing of the Interrogatory Responses and RPD Responses was accidental and swiftly fixed. (*Id.* at 4.)

## ANALYSIS

Although Plaintiff seeks a panoply of sanctions, the authority to sanction derives from two sources: Federal Rule of Civil Procedure 37, and the court's inherent power to manage its own affairs. Rule 37 "provides for sanctions for the violation of discovery orders, which include protective orders." *Sandoval v. Am. Bldg. Maint. Indust., Inc.*, 267 F.R.D. 257, 264 (D. Minn. 2007). The Court's inherent authority also includes the power to discipline litigants appearing before it. *Harlan v. Lewis*, 982 F.2d 1255, 1259-60 (8th Cir. 1993). A court does not necessarily need to find that a party willfully disobeyed a court order before issuing sanctions under Rule 37. *Card Tech. Corp. v. DataCard, Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008). Likewise, under the Court's inherent authority, "a

finding of bad faith is not always necessary to the court's exercise of its inherent power to impose sanctions." *Stevenson v. Union Pac. R. Co.*, 354 F.3d 738, 745 (8th Cir. 2004).

When considering a motion for sanctions, district courts are afforded broad discretion. *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 09-cv-1091 (JNE/JSM), 2013 WL 449775, at *16 (D. Minn. Jan. 8, 2013); *Cronin v. Sanuwave Health, Inc.*, 23-cv-1295 (SRN/ECW), 2024 WL 3518142, *3 (D. Minn. July 24, 2024). But that discretion is informed by the conduct at issue; the worse the transgression, the more severe the consequence. *Card Tech. Corp.*, 249 F.R.D. at 571-72; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *see also Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (noting that the district court's discretion "narrows as the severity of the sanction or remedy it elects increases"). And the converse is just as true—a court should moderate its exercise of sanction authority where appropriate based on the facts before it.

No doubt, I.Q. Data violated this Court's Protective Order and Rule 5.2 by publicly filing Plaintiff's Interrogatory Responses and RDP Responses. The Court accepts I.Q. Data's assertion that the public filing of this confidential material was inadvertent. But it was also inexcusable—this is not a circumstance where a party is in technical noncompliance with some byzantine law. I.Q. Data's privacy obligations were well and clearly delineated in a simple Rule of Civil Procedure and straightforward Protective Order. And as a result of I.Q. Data's missteps, a significant tract of Ms. Stekly's private data was put at risk. The Court does not take this issue lightly.

All that said, there are a number of mitigating factors that weigh against sanctions here. First, even though the result of I.Q. Data's mistake was to publicly disclose private

data, it *was* inadvertent. This Court is less apt to punish an accidental lapse. Additionally, this is not a pattern of misconduct, but rather appears to be an isolated occurrence. Also importantly, steps were taken to correct the errors within a matter of hours. By the time the court was open for business the next day, I.Q. Data's objectionable after-hours filing was restricted from public access. And finally, I.Q. Data's counsel has assured the Court that it has instituted additional internal controls to ensure there will be no repeated error.

To be clear, the Court does not condone the conduct of I.Q. Data here, and would be well within its discretion to impose sanctions pursuant to its inherent authority, Rule 37, or both. However, given the entirety of circumstances, the Court has concluded that restraint is the better course given the isolated, limited violation at issue here. No sanctions will be issued under either Rule 37 or the Court's inherent authority.

The only remaining matter is the issue of attorney's fees. Rule 37 requires the offending party to pay the other side's reasonable expenses including attorney's fees, unless circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C). Plaintiff requests "attorney's fees and expenses incurred in bringing this motion." (Doc. 95 at 2.) But the circumstances cast significant doubt on whether Plaintiff actually needed to bring this motion. As described above, I.Q. Data certainly violated Plaintiff's privacy rights. But I.Q. Data acted swiftly to correct the problem: the offending filings occurred after the close of business on September 17, 2025, and were removed from public access by the time Court was open the next business morning. By all accounts, Plaintiff's counsel was aware that counsel for I.Q. Data was planning to remedy the situation by virtue of their call on the evening of September 17, 2025. Nonetheless, Plaintiff filed the instant motion

that same evening, before defense counsel (or the Court) could implement any remedial measures.[3] While the Court does not fault counsel for zealously representing Ms. Stekly's interests, it also will not reward a race to the courthouse for an unnecessarily quick, after-hours filing. The circumstances of this matter lead the Court to conclude that an award of fees for Ms. Stekly's motion would be unjust, and will not be granted.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Sanctions and to Seal Improperly Filed Documents (Doc. 95) is DENIED.

IT IS SO ORDERED.

DATED:  June 22, 2026                    _s/Douglas L. Micko_
                                         DOUGLAS L. MICKO
                                         United States Magistrate Judge

---

[3] Because Court was already closed when counsel spoke on September 17, 2025, it is hard to conceptualize what more defense counsel could have done that night.